CASE 93—ACTION BY LOWRY AGAINST CITY OF LEXINGTON TO TEST THE
VALIDITY OF AN ORDINANCE.—JUNE 13.

113  763
116  162

113  763
116  162

# Lowry v. City of Lexington.

APPEAL FROM FAYETTE CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS.     REVERSED.

MUNICIPAL CORPORATIONS—POWER TO CREATE OFFICES BY ORDINANCE
—DETERMINATION AS TO WHO ARE OFFICERS—METHOD OF AP-
POINTMENT—VALIDITY OF ORDINANCE—RELATION TO MORE THAN.
ONE SUBJECT—REVISION OF ORDINANCES AFTER EXPIRATION OF
TIME ALLOWED—METHOD OF AMENDMENT—CHANGE OF COMPEN-
SATION OF OFFICERS.

Held: 1. Under Kentucky Statutes, section 3172, part of charter of
cities of the second class, abolishing all city offices thereto-
fore created not expressly provided for in the charter, but pro-
viding that "the general council shall have power, by ordi-
nance, to re-create such of said offices, and prescribe the terms
and duties thereof, as may be needed to effect the corporate
purposes," a city of the second class is limited in the crea-
tion of offices to such offices as had theretofore been in exist-
ence, but is not thus limited in the selection of mere clerks
and employes who do not perform governmental or official
functions; and under this rule the assistant treasurer, assist-
ant jailer, assistant engineer, and license inspector are munic-
ipal officers, while the ambulance driver, patrol-wagon driver,
assessor's clerk, mayor's clerk, and stenographer to clerk's of-
fice are not such officers.
2. Kentucky Statutes, section 3133, part of charter of cities of the
second class, providing that it shall be the duty of the city
clerk, "in person or by deputy," to attend all meetings of the
general council, implies the power to create the office of deputy
clerk.
3. Kentucky Statutes, section 3040, providing that all officers not
required to be otherwise elected shall be elected by the gen-
eral council, requires the election by the general council of all
officers not required by the charter, to be otherwise elected,
and does not give the council power, in creating an office, to
provide that it shall be filled otherwise than by election by
the council; but this provision does not apply to mere clerks,

employes, or laborers, whose appointment may be made in such manner as the council shall designate.

4. Though Kentucky Statutes, section 3061, provided that the ordinances of cities of the second class should be revised within one year from the time the charter took effect, a revision made after the expiration of that time was valid.

5. Under Kentucky Statutes, section 3059, providing that no ordinance shall be revised or re-enacted by mere reference to the title, but that same shall be set forth at length as if it were an original ordinance, and that in case of amendment the ordinance or section amended shall be set forth in full as amended, any chapter or section of the revision of the ordinances may be amended by reference thereto, and by setting out in full section or chapter as it is intended to read when amended.

6. Though Kentucky Statutes, section 3059, provides that no ordinance shall embrace more than one subject, and that shall be expressed in the title, an ordinance entitled "An ordinance to amend section 208, chapter XII., of the city ordinances," and relating to offices, and salaries and bonds of officers, is valid, as these subjects are naturally connected.

7. As legislation is to be so construed, if possible, as to make it valid, a city ordinance changing the compensation of officers will not be construed as applying to persons who were incumbent of the offices at the time of the passage of the ordinance.

SAMUEL M. WILSON, ATTORNEY FOR APPELLANT.

PROPOSITIONS AND AUTHORITIES CITED.

Introductory.   Present Const. of Ky., secs. 51, 156; Const. of Ky., of 1850, art. 2, sec. 37; Act of March 19, 1894, art. 3, chap. 89, Kentucky Statutes (secs. 3038 to 3235 inclusive); Secs. 3059, 3061, 3196, Kentucky Statutes.

1. Title to Ordinance No. 1113 insufficient. Kentucky Statutes, sec. 3059; Pennington v. Woolfolk, &c., 79 Ky., 13.

2. Ordinance No. 1113 embraces a plurality of subjects, and none of these subjects agree with the title. There is no subject covered by the title, which stands alone or is severable from the rest of the ordinance. Carter County v. Sinton, 120 U. S., 517; Phillips v. Cov. & Cin. Bridge Co., 2 Met., 221; Dillon Munic. Corps. (4th ed.) vol. 1, secs. 51, 47, 87, 91; Astor & Bailey v. N. Y. Arcade Ry. Co., cited by Dillon Munc. Corp., vol. 1, p. 89; Cooley on Const. Lim., 1st ed., pp. 141-151; Varney v. Justice, 86 Ky., 596; Horr & Bemis, "Munic. Police Ordinances," sec. 35 of Chap. 5, and sec. 71; Howland Coal & Iron Works, &c. v. Brown, 13 Bush, 681; Beach on

Public Corps., vol. 1, secs. 504, 77; sec. 8 of Act of February 26, 1886, Amending Lex. Charter; Elliott v. City of Louisville, &c., 101 Ky., 262; s. c., 19 Ky. Law Rep., 414; Kentucky Statutes, sec. 2777; Town of Cantrill v. Sanier, 59 Iowa, 26; Stebbins v. Mayer, (Kansas) 16 Pac. Rep., 745; Lincoln Land Co. v. Village of Grant, (Nebraska) 77 N. W. Rep., 349; Bergman & Wife v. St. Louis, I. M. & S. R. R. Co. (Missouri), 1 S. W. Rep., 384; Missouri Pac. Ry. Co. v. City of Wyandotte et al., (Kansas) 23 Pac. Rep., 950; Note to Bobel v. People, 173 Ill., 19; s. c. 64 Am. St. Rep., 64; Conley v. Comth., 98 Ky., 125.

3. Ordinance No. 1113 is bad, because it creates offices unauthorized by charter, and does this in an irregular way. At least, bad to the extent that such offices are created. Kentucky Statutes, secs. 3172, 3049, 3131, 3144, 3145, 3132, 3133-3136, 3114, 3157, 3177; Present Const. of Ky., secs. 156, 166, 160, 249, and sec. 59, subsec. 18; Act of June 10, 1882, sec. 45; sec. 3 of Act of February 20, 1890; East St. Louis v. Thomas, 11 Ill., App., 283; Kniper v. City of Louisville, 7 Bush, 599.

4. No power in council to digest or codify ordinances or to amend such digest or codification by reference to its chapters and sections merely. Secs. 8 and 10 of Act of February 26, 1886; sec. 7 of Act of May 17, 1886; Compilations of Lex. City Ordinances of the years 1851, 1870, 1883 and 1897; Kentucky Statutes, secs. 3059, 3061, 3196, 2751; Re Jo. E. Haskell, 112 Cal., 412; s. c. 32 L. R. A., 527; Vessant v. Knox, 27 Ark., 272; Cent. Dic. and Webster's Internat. Dict. definitions of "Revise" and "Revision;" Compiled Ordinances of Louisville, Covington and Newport; Sedgwick on Construction, Stat. and Const. Law, pp. 338, 466; 15 Am. & Eng. Ency. Law, p. 1041 (1st ed.) Henderson, &c. v. City of Covington, &c., 14 Bush, 312.

### ADDITIONAL POINTS AND AUTHORITIES.

1. No inherent or implied power in cities of second class to create offices or deputy offices, such as those complained of by appellant. Kentucky Statutes, secs. 3038, 3172, 3058, subsec. 25; Dillon on Municipal Corporations (4th ed.) vol. 1, secs. 39, 89, 91, 206, 207, and foot note to sec. 207; Hoboken v. Harrison, 1 Vroom (30 N. J. L.) 73; Costello v. Mayor, &c. of N. Y., 63 N. Y., 48; Sullivan v. Mayor, &c. of N. Y., 53 N. Y., 652, s. c. 47 How. Pr. R., 491; Henderson, &c. v. City of Covington, &c., 14 Bush, 312; Patton, &c. v. Stephens, &c., 14 Bush, 324; City of Covington v. Mayberry, 9 Bush, 304; Brissenden v. Clay County, 161 Ill., 216; s. c. 43 N. E. Rep., 977.

2. The assistants, deputies or clerks provided for in ordinance

No. 1113 are officers and not mere employes. City of Louisville v. Wilson, 99 Ky., 598; s. c. 18 Ky. Law Rep., 427.

3. True meaning of last clause of section 3049, Kentucky Statutes.

4. Legality of the publication styled "The Revised Ordinances of the City of Lexington." Cons. of 1850, art. 2, sec. 37; art. 8, sec. 22; Cons. of 1891, secs. 51, 245; Kentucky Statutes, secs. 3059, 3061; Re Jo. E. Haskell, 112 Cal., 412; s. c. 32 L. R. A., 527; Compiled Ordinances of Louisville, Newport and Covington.

5. As to the city clerk and his deputy. Kentucky Statutes, secs. 3133, 3172; Time of meeting of two boards of general council in Newport and Covington referred to; Act of March 19, 1894 (Charter of Cities of Second Class); Lexington Charter of April 19, 1882, sec. 8; Sec. 5 of Act of February 26, 1886, Amending Act of April 19, 1882; sec. 5 of Act of May 17, 1886, Amending Act of February 26, 1886.

6. In conclusion. Horr & Bemis' Municipal Police Ordinances, sec. 17.

W. S. BRONSTON, CITY SOLICITOR, FOR APPELLEE.

It would be absurd to say that either the framers of the Constitution or the members of the Legislature would attempt to enumerate to the minutest detail the powers and limitations of the various municipal corporations, or that either body would attempt to lay down an absolute rule of law, that there should be certain officers and no others, no matter what the progress or growth of the city might require; and we contend that whenever the needs and requirements become such that the officers specifically mentioned can not perform the duties of their respective offices, by themselves, then it becomes a part of prudence, economy and good government to allow them assistants; calling them deputies makes no difference. They are not officers in the sense of officers called for in the Constitution, which the city is required to fill, but are such assistants and employes, as are needed from time to time, who can be discharged at any time, and whose salaries can be changed at any time; in other words, they are not *constitutional* officers, but needful and useful employes, made necessary by the needs of the city; and these assistants may be appointed by the officers, if authorized so to do by a city ordinance.

The only point, that we believe calls for the serious consideration of the court, made by counsel for appellant in his interesting brief from a literary standpoint, is, whether or not the title of the ordinance No. 1113, is sufficient.

We take it for granted that no one who voted for it could
have been misled or deceived, as it had to be passed, and
was passed and published, under the provision of section 3059,
Kentucky Statutes, which provides that "no ordinance and
no resolution shall be passed unless a majority of the members-
elect in each board shall vote therefor on a *vive voce* vote,
which shall be entered in full on the journals of the two boards,
and until it shall have been read in each board at two sev-
*eral meetings and free discussion allowed thereon, &c."*

This provision having been complied with the principles of
the law were certainly observed in putting all members of the
legislative board on their guard, as to what was being passed.

### AUTHORITIES CITED.

Kentucky Statutes, secs. 3038, 3133, 3049, 3059; Collins v.
Henderson, 11 Bush, 74; Com. v. Bailey, 81 Ky., 395; Allen v.
Hall, 14 Bush, 85; Com. v. Cain, 14 Bush, 525; Burnside v.
Lincoln Co. Ct., 86 Ky., 423.

Opinion of the court by JUDGE DURELLE—Reversing.

This was a proceeding instituted, under section 3063,
Kentucky Statutes, by a citizen of Lexington, to test the
validity of ordinance No. 1113, adopted by the city coun-
cil.    The ordinance is entitled "An Ordinance No. 1113,
to amend section No. 208, chapter XII., of the city ordi-
nances," and ordains that "the following shall be the pub-
lic offices and clerkships in the city of Lexington, and the
officers, clerks and assistants shall receive the annual sal-
aries attached to the respective offices, payable monthly."
Among the offices and employments mentioned are the fol-
lowing, concerning which the controversy in this case
arose:

| | |
|---|---:|
| Assessor's clerk | $600 |
| Assistant treasurer | 900 |
| Engineer's assistant | 600 |
| License inspector | 720 |
| Assistant city clerk | 600 |
| Mayor's clerk | 600 |
| Jailer's assistant | 900 |

Stenographer to clerk's office ..................... $300
Ambulance driver ............................... 480
One patrol-wagon river .................... ......... 720

These offices are alleged to be unauthorized by the char-
ter of the city, and in violation thereof; and it is claimed
that the ordinance is therefore, and for other reasons, il-
legal and void.

The objections to the ordinance may be condensed as
follows:  First.  There is no inherent or implied power
in cities of the second class to create the offices or deputy-
ships named, and provide salaries therefor; and, to the
extent of such attempted creation, the ordinance is void.
Second.  The mode of appointment provided for by the or-
dinance is in violation of the Constitution and the charter,
which require the selection of such officers to be made by
the general council.   Third.   That the city council was
without power to codify the whole body of ordinances of
the city by a single act of legislation, or to amend any part
of such a publication by mere reference to its chapters
or sections; that the ordinance in question covers more
than one subject, and that is not expressed in its title.
Fourth.   That in so far as the ordinance undertakes to
change the compensation of other officers of the city of
Lexington, such change to take effect from the passage of
the ordinance, it is in violation of the Constitution and
void.

By section 156 of the present Constitution it is provided
that:   "The cities and towns of this Commonwealth, for
the purposes of their organization and government, shall
be divided into six classes.   The organization and powers
of each class shall be defined and provided for by general
laws, so that all municipal corporations of the same class
shall possess the same powers and be subject to the same

restrictions. . . . The General Assembly, by general law, shall provide how towns may be organized, and enact laws for the government of such towns until the same are assigned to the one or to the other of the classes above named. ' ' '" Section 160 provides how the mayor, or chief executive, police judges, and members of legislative boards of all cities and towns shall be elected, and further provides: "But other officers of towns or cities shall be elected by the qualified voters therein, or appointed by the local authorities thereof, as the General Assembly may, by a general law, provide; but when elected by the voters of a town or city, their terms of office shall be four years, and until their successors shall be qualified. . . . The General Assembly shall prescribe the qualifications of all officers of towns and cities, the manner in and causes for which they may be removed from office, and how vacancies in such offices may be filled." Section 161 is as follows: "The compensation of any city, county, town or municipal officer shall not be changed after his election or appointment, or during his term of office; nor shall the term of any such officer be extended beyond the period for which he may have been elected or appointed." Section 165 disqualifies certain State and district officers from holding municipal office. Section 166 continues in force the former acts of incorporation of cities and towns "until such time as the General Assembly shall provide by general laws for the government of towns and cities, and the officers and courts thereof; but not longer than four years from and after the first day of January, one thousand eight hundred and ninety-one, within which time the General Assembly shall provide by general laws for the government of towns and cities, and the officers and courts there-

of, as provided in this Constitution." Section 167 provides for the continuance in office of the old officials of cities, and of the old mode of electing and appointing officials, until the November election, 1893, provides in what years elections of town officers shall be held, whether in the odd or even years, and definitely fixes the terms of office of police judges. It appears, therefore, that it was not considered beneath the dignity of the framers of the Constitution to make specific provision for the mode of election and term of office of many of the officers of all classes of cities, and to secure the compensation of such officers against change during their terms of office. Under authority of section 156, and by the act for the government of cities of the second class, which became a law March 19, 1894 (which appears in the Kentucky Statutes in sections 3038 to 3235, inclusive), the organization and government of the city of Lexington and other cities of the second class was provided for. By section 3172, Kentucky Statutes, it is provided: "All offices created by laws in force prior to this act taking effect, not herein expressly provided for, shall be, and they are hereby, abolished upon the expiration of the terms for which the present incumbents may have been respectively elected; but the general council shall have power, by ordinance to re-create such of said offices, and prescribe the terms and duties thereof, as may be needed to effect the corporate purposes."

Appellant insists that by the section last quoted, which is a delegation of power to re-create certain offices, the city is limited to such offices as had theretofore been in existence, and could not create additional municipal offices. On the other hand, it is claimed for appellee that neither the constitutional convention nor the Legislature attempted to enumerate in detail the powers and limitations of the

various municipalities, or to lay down an absolute rule that
there should be certain officers, and no others, no matter
what the progress or growth of the city might require,
and that, if a city of the second class should increase from
30,000 to nearly 100,000 inhabitants, it would be absurd
to require the city's business to be performed by the offi-
cers, deputies, assistants, and employes that were ample
to perform the duties required in the earlier stages of its
growth.     Authority to create these officers or employ-
ments is also claimed under section 3038, Kentucky Stat-
utes, declaring what cities shall be assigned to the sec-
ond class, and endowing them "with power to govern them-
selves in all fiscal, prudential and municipal concerns, by
such ordinances and resolutions as they may deem proper,
not in conflict with this act or the Constitution of the
State of Kentucky or the Constitution of the United
States; to acquire property for municipal purposes, by pur-
chase or otherwise, within their corporate limits or else-
where: to hold the same and all property and effects now
belonging to the said cities, held either in their own name
or in the name of others, for the use of each of said cities,
for the purpose and interest for which the same were
granted or dedicated; to use, manage, improve, sell, con-
vey, rent or lease the same; to have like power over prop-
erty hereafter acquired, and as such, by their respective
names, shall be capable in law of contracting and being
contracted with, of suing and being sued, of pleading and
being pleaded, answering and being answered, in all courts
and places, and in all matters whatsoever; and shall have
and use, respectively, a corporate seal, and make, change,
alter and renew the same at pleasure."    The power thus
asserted may be freely conceded, in so far as it relates to
the management of the business of the municipality as a

business corporation in the employment of such agencies as it may deem proper to perform the labor required, and, further, in the selection of mere clerks and employes who do not perform governmental or official functions.   As to such employes, it seems conceded by appellant that the city may, through its council, act under authority of the statute assigning it to its proper class, and conferring upon it the general powers recited.   So it is practically conceded by appellant that the ambulance driver and the patrol-wagon driver are not necessarily officers of the municipality, and are within the scope of the city's power to regulate by ordinance.   To this we are of opinion there may be added the assessor's clerk, the mayor's clerk, and the stenographer to the clerk's office.   We do not think the courts should be over nice in enforcing limitations upon the powers of municipalities, when by fair construction the exercise of such powers may be justified.

The office of deputy city clerk, the creation of which is also complained of by appellant as having been accomplished by ordinance subsequent to the passage of the act for the government of cities of the second class, stands upon a somewhat different footing.   The statute (section 3133) provides that "it shall be the duty of the city clerk, in person or by deputy, to attend all meetings of the general council, both in joint and separate session. . . ." This statute seems plainly to carry authority, by implication, for the existence of the deputy city clerk.   It seems, moreover, that under the former law there was authority for a clerk of each board of the general council; and we have little difficulty in holding that the city is authorized to create the office of deputy clerk, provided the ordinance is in other respects unobjectionable.

But the offices of assistant treasurer, assistant jailer, as-

Lowry v. City of Lexington.

sistant engineer and license inspector seem to us, after an examination of the powers and duties attempted to be conferred upon them by the ordinances, to be municipal offices, within the ruling of this court in the opinion by Judge Lewis in City of Louisville v. Wilson, 99 Ky., 598 (18 R., 427) 36 S. W., 944, where 'the test was thus stated: "There are various tests by which to determine who are officers in the meaning of the law, but at last in case of uncertainty, the intention of the lawmakers controls.    To constitute an officer, it does not seem to be material whether his term be for a period fixed by law, or endures at the will of the creating power; but if an individual be invested with some portion of the functions of the government, to be exercised for the benefit of the public, he is a public officer.    Meach. Pub. Off. section 1."    It was there held that the secretary of the board of public works in the city of the first class, the assistant bailiff and the stenographer of the police court were municipal officers, within the meaning of section 161 of the Constitution.

We have seen that the Constitution provides with some degree of particularity for the officers of municipalities. The statute for the government of cities of the second class does so with greater particularity.    It authorizes, in section 3172, before quoted, the council to re-create such of the offices theretofore authorized for each city as may be needed to effect the corporate purposes.    This provision of the charter leaves each of the cities of the second class with power to supply itself with what is presumably a sufficient official force for its present needs, and also, it would seem, to fix a limitation sufficiently elastic, in view of the fact that the Legislature meets biennially.    It is difficult to understand how an express power given in an act abolishing existing offices to re-create such of them as may be

needed can be construed otherwise than as a limitation of
the power of creation to the re-creation of the then exist-
ing officers.    And we are the more convinced that it was
the purpose of the Legislature that this should be a lim-
itation of the power of the general council when we con-
sider the numerous and particular provisions of the stat-
ute with regard to the officers of municipalities.    The pro-
visions which we have cited from the Constitution are re-
iterated with greater particularity. ' The powers and du-
ties of the officers mentioned in the Constitution are more
specifically defined.    Their salaries may not be changed
during their terms of office (section 3064); a superintend-
ent of public works is provided for (section 3118 et seq.);
also a board of public works (section 3125); an auditor
(section 3126 et seq.); a city treasurer (section 3131 et seq.);
a city clerk (section 3133 et seq.); police and fire commission-
ers (section 3127 et seq.); a chief of fire department (sec-
tion 3142); commissioners of waterworks (section 3143);
a city engineer (section 3144); a jailer (section 3145); a
police judge (section 3146); a city attorney (section 3165);
a city solicitor (section 3166); an assessor and deputy as-
sessors (section 3177) and a delinquent tax collector (sec-
tion 3188).    And there are divers other provisions concern-
ing the qualifications, bonds, powers, and duties of such
officers.    We think it manifest from the whole tenor of
the enabling act that the legislative intent was to limit
the municipal officers to those mentioned therein, or indi-
cated by the reference to previously existing laws.    1 Dill.
Mun. Corp., sections 206, 207, citing Costello v. Mayor,
63 N. Y., 48, and Sullivan v. Mayor, 53 N. Y., 652.    It fol-
lows, therefore, that, to the extent the ordinance under-
takes to create offices not thus authorized by the charter;
it is invalid.

It is also objected that the ordinance is invalid in so far as it provides for the appointment of officers otherwise than by the general council in joint session, under section 3049, Kentucky Statutes, which provides that "all officers and agents of the city, in any of its departments, not required to be otherwise elected or appointed, shall be elected by the genral council in joint sssion upon joint *viva voce* vote, subject to removal at any time by said general council." For the city it is maintained that this should be construed to mean that if the general council, in creating the offices, has not required them to be otherwise elected or appointed, then they shall be elected by the general council. We are not able to concur in this view. It seems to us clearly to mean "not required by the charter to be otherwise elected" or appointed. And we think that section 160 of the Constitution, before quoted, looks to a provision by the General Assembly for the mode of appointment or election of such officers. This, in our judgement, however, does not apply to mere clerks, employes, or laborers, whose employment may be made in such manner as the council shall designate.

It is also objected that the ordinance is invalid under section 3059, Kentucky Statutes, which provides that no ordinance shall embrace more than one subject, and that shall be expressed in the title, together with a provision that no ordinance shall be revived or re-enacted by mere reference to the title thereof, but the same shall be set forth at length as if it were an original ordinance, and, in case of amendment, that the ordinance or section amended shall be set forth in full as amended. By section 3061 it is provided that all ordinances now in force, "not inconsistent with this act and the Constitution of the State, are hereby continued until they are revised, and until re-

vision of ordinances is made and adopted by the general
council, which is hereby ordered to be done within one year
from the time this act takes effect." Naturally, the re-
vision was not made within the year provided by the act,
but was finally made, and the official name of the revis-
ion seems to be "The Revised Ordinances of the City of Lex-
ington." We are not inclined to the view that the re-
vision was absolutely void because not made within the
time specified, or because perhaps, not done as well as it
might have been. Assuming the revision to have been
lawful, the provisions of the section attempted to be
amended relate to subjects naturally connected,—officers,
salaries, and bonds of officers,—and are such as might prop-
erly be provided for in one ordinance. Burnside v. County
Ct., 86 Ky., 423 (9 R., 635) 6 S. W. 276. The revision be-
ing authorized, it would seem that any chapter or section
thereof might be amended by reference thereto, and by
setting out in full such section or chapter as it was intend-
ed to read when amended.

It is further objected that the ordinance in question un-
dertakes to change the compensation of other officers rec-
ognized and authorized by the act. This objection would
be clearly well taken under section 161 of the Constitu-
tion, and section 3064, Kentucky Statutes, if we construed
the ordinance to apply to the persons who were incum-
bents of those offices at the date of the passage of the
ordinance. This construction, however, should not be
given the ordinance, under the well-known rule which re-
quires legislation to be so construed, if possible, as to
make it valid; and the provision for the change of salaries
will therefore be held not to take effect until the expira-
tion of the terms of the incumbents.

For the reasons given the judgment is reversed, and

the cause remanded, with direcctions to set aside the order sustaining the demurrer to the petition, and for further proceedings consistent with this opinion.

Whole court sitting.

Judges Paynter and Hobson dissenting.