# Weyman v. City of Newport, et al.

(Decided May 1, 1913.)

## Appeal from Campbell Circuit Court.

1. License Tax—Municipal Corporations May Impose.—A municipal corporation has the power to impose a license tax on all trades businesses, occupations and professions, and this includes milk dealers.

2. License Tax—Uniformity.—It is not essential that license taxes shall be uniform in the sense that all trades, occupations and businesses must be taxed, the rule being that it is competent for the taxing authority to tax persons engaged in a designated trade, occupation or business and exempt or not tax persons engaged in another trade, occupation or business.

2. License Tax—Uniformity—Classification.—In the imposition of license taxes, trades, occupations and businesses may be classified, if the classification is made upon a natural and reasonable basis, and a different license imposed upon each class, but when a license tax is imposed upon a class, then it must be uniform upon the class singled out for taxation.

4. Ordinances—Construction of.—In the construction of ordinances the intention of the law-making department should be carried out, if this can be done consistently with the fair reading of the ordinance, and likewise an ordinance should be so construed as to sustain its validity, when it is reasonably susceptible of this construction.

5. Ordiances—Effect of Unequal and Discriminatory Administration of.—Where municipal authorities go through the form of enacting a valid ordinance, intending that it shall be so applied as to be unequal and discriminatory, the ordinance should be declared invalid when persistently and systematically enforced in an unequal and discriminatory manner against a class intended to be taxed. Otherwise a municipal body so disposed could, by indirection, evade the operation of laws that otherwise must be observed and obeyed. But it is only when it is made plain that the city authorities systematically administer an ordinance unequally to give advantage or preference to an individual or class of individuals, to whom no advantage or preference could be shown if expressed in the ordinance, that it will be declared invalid at the instance of an individual or class discriminated against by the partial execution of the ordinance by the city authorities.

6. Milk Depots—Definition of.—Where an ordinance provided that all persons selling milk at milk depots should pay a specified license fee, the words "milk depot" should be construed to mean any place at which milk is sold whether exclusively or in connection with other lines of business.

ROBERT C. SIMMONS for appellant.

OTTO WOLFF for appellees.

Opinion of the Court by Judge Carroll—Affirming.

In 1894 the General Council of the city of Newport, a city of the second class, enacted a general license ordinance fixing the license fees that persons engaged in various trades, occupations and businesses should pay, and in one section of the ordinance provided "that each and every person, corporation or company engaged in the business of vending milk in the city of Newport shall pay an annual license fee or tax of the sum of ten dollars when carried on with a wagon, and ten dollars when carried on in a depot."

The appellant, Weyman, a milk dealer residing in Campbell County and selling milk from a wagon in the city of Newport, brought this suit attacking the validity of this ordinance upon the ground that it was not uniform in its operation or application in that it imposed a tax upon persons who sold milk from a wagon or "from a depot" and exempted a number of dealers in milk who did not sell from wagons or at milk depots, and upon the further ground that the unequal and discriminatory administration of the ordinance rendered it invalid when attempted to be enforced as to him. He averred in his petition that " 'by depot' the framers of said ordinance undertook to describe and refer to a place where milk is sold exclusively or chiefly, said commodity being brought to such a place where it is retailed to the public, who as a rule purchase same at said place and who do not require same to be delivered by wagon. The word 'depot' as used in said ordinance was then and is now a word of well recognized meaning and generally understood by dealers and the public generally as referring to or describing a place where milk is sold in the manner above indicated, and does not include and is not generally understood as including other places of business where milk is sold but not exclusively, and where other commodities and articles of merchandise are sold in greater quantities than milk. That in many stores in which other merchandise was sold during said period, milk was also sold in large quantities, but said ordinance was not intended to and did not affect or reach milk dealers thus engaged who sold milk in connection with other commodities or articles of trade; nor was same enforced or attempted to be enforced against said milk dealers at any time during the period covered thereby, and plaintiff says during all of said time said ordinance

was interpreted, construed and enforced as not affecting or including those numerous classes of milk dealers who did not use a wagon in said business, or carry same on in a depot, but conducted and carried same on in conjunction with other lines of business.''

To this petition the city, after entering a general demurrer, filed an answer controverting the averments of so much of it as we have set out. Thereafter evidence was taken in behalf of both parties and on hearing the petition of appellant was dismissed.

Witnesses introduced for appellant testified in substance that a large number of persons engaged in business in the city of Newport, sold milk in connection with groceries, confections and other articles of food, but were not required by the city authorities to pay a milk license. That only one person was engaged in the sale of milk exclusively at his place of business, while a number of persons sold milk from wagons, and the license fee was only collected from the single individual who sold milk exclusively at his place of business and from those who sold it from wagons.

The witnesses in behalf of the city, and who were officers of the city, testified that the purpose of the ordinance was to require all persons who sold milk from wagons or at their place of business, whether exclusively or in connection with other articles, to pay the license tax, and these officers, while admitting that persons who sold milk in connection with other articles were not required to pay the license, attributed this failure to the indifference or negligence of the officials charged with the duty of enforcing the ordinance.

That the city had the right to impose a license tax on all persons engaged in selling milk in the city either exclusively or in connection with other lines of business, is not controverted, and indeed it could not be, as section 181 of the constitution expressly directs that the General Assembly may authorize municipal corporations to impose and collect license fees on trades, occupations and professions, and this authorization is broad enough to include any business or branch of business that any person may carry on in a city. Under this constitutional authority the General Assembly expressly conferred upon the General Council of cities of the second class the power to license, tax and regulate all persons engaged in business in the city, including ''milk dealers.'' Hall v. Com., 101 Ky., 382.

The power of the city to impose a license tax on vendors of milk being admitted, we find it necessary to consider only two questions raised by counsel for appellant, and these are: (1) Is it necessary that an ordinance of this character should be uniform in its operation, and if so, is the ordinance in question uniform, and (2) will the failure of the city officials, charged with the duty of collecting the tax, to require all persons subject to the provisions of the ordinance to pay it, exempt from the operation of the ordinance other persons who are undeniably subject to its provisions and who are required to pay the license, or, to state it differently, will the failure of the city officials to enforce an ordinance against a large class of persons to whom it is applicable, make the ordinance invalid when attempted to be applied to any of the class embraced by its provisions?

In reference to the question of uniformity, we have held in a number of cases that neither section 171 of the Constitution, providing in part that "taxes shall be uniform upon all property subject to taxation within the territorial limits of the authority levying the tax," nor section 181 of the Constitution authorizing the imposition of license fees, is applicable to license taxes imposed by municipal authority in the sense that all trades, occupations and businesses must be taxed, the settled rule being that it is competent for the taxing authority to tax persons engaged in a designated trade, occupation or business and exempt or not tax persons engaged in other trades, occupations or businesses.

We have also held in many cases that persons engaged in the same trade, occupation or business may be classified, if the classification is made upon a natural and reasonable basis, and a different license fee imposed upon each class. We have also held in many cases that when a licence tax is imposed upon a class of persons engaged in a particular business, trade or occupation that all persons engaged in such trade, occupation or business are subject to the tax, and that it must be uniform upon the class singled out for taxation. Commonwealth v. Payne Medicine Co., 138 Ky., 164; City of Louisville v. Sagalowski & Son, 136 Ky., 324; Hager v. Walker, 128 Ky., 1; Brown-Foreman Co. v. Commonwealth, 125 Ky., 402; Carlisle v. Hechinger, 103 Ky., 381; City of Covington v, Dalheim, 126 Ky., 26; Read v. Graham, 31 Ky. L. R., 569; Gordon v. City of Louisville, 138 Ky., 442.

Under these authorities an ordinance imposing a license tax upon vendors of milk would not be valid unless all vendors of milk were taxed, but it would be competent for the council to classify vendors of milk, if the classification could be made upon a reasonable and natural basis and impose a different license fee on each class so created. The General Council, however, in the enactment of the ordinance under consideration did not attempt any classification of vendors of milk. As we construe the ordinance, it includes all vendors of milk and imposes the same tax upon all of them, and therefore is not open to the objection that it is lacking in uniformity in that it taxes some vendors of milk and exempts others.

It will be observed that the ordinance provides that "all persons vending milk in the city shall pay an annual license fee of ten dollars when the vending is carried on in a wagon or in a depot." Manifestly the purpose of the ordinance was to impose the same tax upon all vendors of milk, and this purpose should not be defeated by giving to the word "depot" a meaning that would only include persons who sold milk exclusively.

In the construction of ordinances the intention of the law-making department should be carried out, if this can be done consistently with the fair reading of the ordinance and likewise an ordinance should be so construed as to sustain its validity when it is reasonably susceptible of this construction. In other words, if an ordinance is open to two constructions, one of which would uphold its validity and the other defeat it, that construction will be adopted that will sustain the validity of the ordinance. Lowry v. City of Lexington, 113 Ky., 763; Swift v. City of Topeka, 43 Kansas, 671, 8 L. R. A., 773; Bradford v. Jones, 142 Ky., 820; Standard Tailoring Co. v. City of Louisville, 152 Ky., 504.

Looking now to the ordinance with a view of carrying out the legislative intent in its enactment, and giving to it as we may well do a construction that will make it effective, we construe the words "milk depot" to mean any place at which milk is sold, whether it be sold exclusively or in connection with other articles of food. The word "depot" has several meanings, among them being, according to Webster, "a place of deposit for goods; warehouse; storehouse"; and, keeping in mind that the purpose of the ordinance was to tax all vendors of milk, we may with propriety give to the words "milk depot" a

meaning that will effectuate the intention of the ordinance, and this we can well do by defining them to mean all places at which milk is sold as an article of trade.

It is very true that the ordinance might have been more accurately phrased and words in common use employed that would leave no room to doubt that all persons vending milk were subject to the tax, but the failure to use words that might have more clearly expressed the intention in the enactment of the ordinance, will not be allowed to defeat its purpose when this purpose can be gathered from the language used.

In support of the contention that the appellant should be relieved from the payment of the tax because the municipal authorities did not enforce the ordinance against all persons coming within its reach, we have been referred by counsel to some authorities supporting the view that although an ordinance is valid on its face, the manner in which it is administered may destroy its validity and make it inoperative when attempted to be enforced against any of the class of persons it purports to be applicable to. Among the cases so holding is Yick Wo v. Hopkins, 118 U. S., 356, 30 L. Ed., 220. In that case the city of San Francisco enacted an ordinance regulating the laundry business. The unequal and discriminatory administration of this ordinance by the city authorities plainly showed that it was enacted for the sole purpose of discriminating against Chinese engaged in the laundry business, and was not intended to be applicable to other persons engaged in the business; and this being so, the ordinance, which on its face was fair and reasonable, was held by the court to be invalid when attempted to be applied to Chinamen, the court saying:

"The cases present the ordinances in actual operation, and the facts shown establish an administration directed so exclusively against a particular class of persons as to warrant and require the conclusion that whatever may have been the intent of the ordinances as adopted, they are applied by the public authorities, charged with their administration, and thus representing the State itself, with a mind so unequal and oppressive as to amount to a practical denial by the State of that equal protection of the laws which is secured to the petitioners, as to all other persons, by the broad and benign provisions of the Fourteenth Amendment to the Constitution of the United States. Though the law itself be fair on its face and impartial in appearance, yet, if it

is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the Constitution.''

In Hoeffling & Son v. City of San Antonio, 85 Tex., 228, an ordinance was also declared invalid when attempted to be enforced against a class of persons embraced by its provisions, upon the ground that the city authorities persistently and purposely failed and refused to enforce it against another class of persons to whom it was applicable. In that case the ordinance involved required the payment of $75 per year ''for the vending of meat'' within the city, and it appears from the opinion that a number of vendors of meat who rented stalls from the city were not required to pay the tax, while vendors who did not rent stalls from the city were required to pay it, although the ordinance on its face applied equally to both classes. In holding that the continued failure of the city officials to collect the tax from vendors of meat who rented stalls from the city was in effect the exemption of this class of vendors from the operation of the ordinance, the court said:

''To hold that it may lawfully collect occupation taxes from some persons, while others pursuing the same occupation were continuously permitted to escape such a tax by failure of the city to compel the proper officer to collect it, would be to hold that the city might accomplish by unlawful non-action what it could not lawfully do by an ordinance declaring that the tax should be collected only from some persons engaged in the particular business.

''Such persistent failure on the part of the city to cause to be collected from those who sold meats in the public market, would evidence as fully an intention not to subject them to the tax as would an ordinance expressly exempting them from it.

The Constitution requires that occupation taxes shall be equal and uniform, and this applies to the collection of such taxes as well as to the levy, and its command cannot be evaded by an ordinance imposing the tax on all persons engaged in a given occupation, if there be no intention or effort to enforce it against a class designated by the place where they do business, or in any other manner. * * *

"The mere failure of the tax collector to collect a tax from some persons, pursuing the taxed occupation, from whom it might be collected, would not invalidate the tax as to others; but if a city intentionally fails to compel its collector to collect from all who pursue such occupation, while it enforces collections from some, then this ought to be held to be unequal taxation, and the city held liable to refund."

We entirely agree with the conclusion reached by the court in these cases. If municipal authorities could go through the form of enacting a valid ordinance while intending that it should be so applied as to be unequal and discriminatory, obviously the ordinance should be declared invalid when persistently and sytematically attempted to be enforced in an unequal and discriminatory manner against the class intended to be discriminated against, otherwise a municipal body so disposed could by indirection evade the operation of laws that otherwise must be observed and obeyed.

But the facts of this case do not warrant us in here applying the principle we have noticed. The city officials who testified said that it was the intention in enacting the ordinance that every vendor of milk, whether he sold it exclusively or in connection with other articles, should pay the license tax, and that, although the ordinance was not enforced against persons who sold milk in connection with other lines of business, this failure was not due to any concerted action on the part of the city authorities to exempt such persons from the operation of the ordinance, but rather to the indifference and negligence of the officers charged with the duty of collecting the license fee.

In the cases we have mentioned a reason was shown why the ordinance was administered unequally by the public authorities. In this case no such reason exists. It does not appear that the city authorities had any motive for desiring to tax one class of milk vendors and exempt another class. No economic, political, social or other theory is advanced why the city authorities did not wish to enforce this ordinance impartially, and if the failure to so enforce it was due to the indifference or carelessness of the license officers, or to a doubt upon their part as to the meaning and applicability of the ordinance, this non-action furnishes no ground for exempting appellant from the payment of the tax. It is only when it is made plain that the city authorities, who have

control of the administration of the affairs of the city, purposely and systematically administer, or connive at or tacitly consent that subordinate agents or officers who are directly charged with the enforcement of the ordinance, may administer it unequally and thereby give an advantage or preference to an individual or class of individuals, to whom no advantage or preference could be shown if expressed in the ordinance, that it will be declared invalid for partial execution at the instance of an individual or class discriminated against.

The judgment is affirmed.