## Lowther v. Peoples Bank.

Feb. 26, 1943.

C. E. Schindler and H. E. Notelevitz for appellant.

Eugene Mosley, Jr., for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

The appellant and plaintiff below, C. F. Lowther, sued the Peoples Bank for a commission of $7,650 alleged to be due him under a contract that he as a real estate broker made with the bank whereby the latter agreed to pay him 5% commission of the sale price for finding a purchaser of a brewery which the bank sold to the Frankenmuth Brewing Company for the alleged price of $153,000. The bank went into liquidation during the litigation and by an amended and substituted petition Hiram Wilhoit, Banking Commissioner of Kentucky, and a Special Deputy Commissioner, Martin P. Corcoran, in charge of the liquidation of this bank, were made defendants. At the conclusion of plaintiff's evidence the trial judge directed a verdict in favor of the bank on the ground that plaintiff had not averred and proved that he was a duly licensed broker or real estate salesman at the time his cause of action arose as is provided in Section 324.320 KRS. The plaintiff appeals.

The petition averred and plaintiff proved that in November, 1937, James B. Brown, President of the Peoples Bank, employed him to find and produce a purchaser of the brewery in consideration of receiving a commission from the bank of 5% of the purchase price. He further proved that on or about November 24, 1937, he produced a purchaser, Frankenmuth Brewing Company, to Brown who told plaintiff that he preferred to negotiate the deal himself from that point without the assistance of plaintiff as he intended to increase the sale price of the property. The sale involved a large sum of money and there were many and long delays before it was consummated in the spring of 1939 when Brown made Frankenmuth a deed to the property.

Section 324.320, KRS, was enacted at the 1938 session of the General Assembly, went into effect May 31, 1938, and reads:

"No person, copartnership, or corporation engaged in the business or acting in the capacity of a real estate broker or a real estate salesman in a city of the first, second or third class or within five miles of the corporate limits thereof in this state shall bring or maintain any action in the courts of this state for the collection of compensation for any services performed as a real estate broker or salesman without,

alleging and proving that such person, copartnership, or corporation was a duly licensed real estate broker or real estate salesman at the time the alleged cause of action arose.''

Neither the petition filed on May 10, 1939, nor the amended and substituted petition filed on April 18, 1941, averred plaintiff was a licensed real estate broker or salesman; and the amended answer filed by defendant averred he was not.

Plaintiff's evidence shows he produced to the bank a purchaser to whom it sold the property and the one question for determination is whether or not plaintiff's failure to allege and prove he possessed a license to sell real estate at the time his cause of action arose precluded him under the above statute from maintaining this action. A license was not procured by plaintiff until May 5, 1939, but he insists that his services were performed when he produced a purchaser in the fall of 1937, when Brown told plaintiff that he (Brown) alone would conduct the negotiations from that point which resulted in a sale to the purchaser produced by plaintiff. The trial judge stated in his written opinion that as the sale was not consummated until March 1939, some ten months after the statute became effective, and as plaintiff's action did not accrue until after the sale was consummated, he was precluded by the statute from maintaining this action.

It is contended by plaintiff that Section 324.320, KRS as applied to him impairs the obligation of his contract and is void under Section 19 of the Kentucky Constitution and under art. 1, Section 10, of the Federal Constitution, citing many federal and Kentucky cases, a few of the illustrative ones are Wood v. Lovett, 313 U. S. 362, 61 S. Ct. 983, 85 L. Ed. 1404; Appleby v. New York, 271 U. S. 364, 46 S. Ct. 569, 70 L. Ed. 992; Board of Education for Jefferson County v. Littrell, 173 Ky. 78, 190 S. W. 465; Kentucky Utilities Co. v. Carlisle Ice Co., 279 Ky. 585, 131 S. W. (2d) 499.

But it is clear that Section 324.320, KRS, in nowise impairs the obligation of the contract existing between these parties and the statute relates only to plaintiff's remedy. The parties to a contract have no right in the remedy existing at the time of entry into the contract and the Legislature may modify, enlarge or limit the existing method of procedure without impairing the ob-

ligation of contracts if a sufficient one be left or provided. Milner v. Gibson, 249 Ky. 594, 61 S. W. (2d) 273; O'Connor v. Hartford Accident & Indemnity Co., 97 Conn. 8, 115 A. 484; City of Memphis v. United States, 97 U. S. 293, 24 L. Ed. 920; Vial v. Penniman (In re Penniman), 103 U. S. 714, 26 L. Ed. 602; Oshkosh Waterworks Co. v. Oshkosh, 187 U. S. 437, 23 S. Ct. 234, 47 L. Ed. 249.

Section 324.320, KRS, is a part of chapter 32 of the Acts of 1938 (pages 224 to 240) wherein the General Assembly created a real estate commission and provided for the licensing of real estate brokers and real estate salesmen in certain class cities and their environs within a five mile limit. In the first section of the Act it is provided:

"On and after the effective date of this Act [which was May 31, 1938] it shall be unlawful for any person * * * to act as a real estate broker * * * without a license issued by the Kentucky State Real Estate Commission."

The quoted language clearly shows that the Legislature had no intention that the Act should have a retrospective effect, but that it was to operate prospectively. Suppose plaintiff had never intended to engage further in the real estate business, could it reasonably be argued that the Legislature intended that he must secure a license in March 1939 just before the deal was closed in order that he might maintain this action on a deal he started in 1937 and completed that year, insofar as his services were concerned, in order to sue for his commissions which did not accrue until the sale was consummated in April 1939? Obviously, the Legislature had no such intention when it passed this Act. From the excerpt above quoted it is patent that the Legislature intended it should apply to sales made by brokers after the Act became effective on May 31, 1938. Long before that date plaintiff had found a purchaser and completed his services connected with the sale.

It appears to be the general rule that a retroactive operation will not be given a statute interfering with antecedent rights unless such be the manifest intention of the Legislature or unless the statute clearly and strictly contains a declaration of retroactivity. 25 R. C. L. 786, Section 35; Jones v. Fidelity & Columbia Trust Co., 6 Cir. 73 F. (2d) 446; United States v. Magnolia Petro-

leum Co., 276 U. S. 160, 48 S. Ct. 236, 72 L. Ed. 509; Shwab v. Doyle, 258 U. S. 529, 42 S. Ct. 391, 66 L. Ed. 747, 26 A. L. R. 1454; Hassett v. Welch, 303 U. S. 303, 314, 58 S. Ct. 559, 565, 82 L. Ed. 858. As this Act contained language showing it was to operate prospectively and not retrospectively, the lower court erred in holding that the plaintiff could not maintain the action.

The judgment is reversed for proceedings consistent with this opinion.

Whole Court sitting, except Judge Rees, absent.