The CITY OF COVINGTON, Kentucky,
Appellant,

v.

SOHIO PETROLEUM COMPANY, Inc.,
Appellee.

Court of Appeals of Kentucky.

May 20, 1955.

Rodney S. Bryson, Ralph P. Rich, Covington, for appellant.

Hughes, Clark & Lee, Covington, for appellee.

MONTGOMERY, Judge.

This action, brought by appellee, Sohio Petroleum Company, Incorporated, sought a declaration on the right of the appellant, City of Covington, Kentucky, to establish water rates for consumers located outside the corporate limits of said city. The judgment appealed from held appellee to be a nonresident consumer of water and appellant's ordinances to be ineffective insofar as they sought to establish water rates for nonresident consumers. The case was tried on an agreed statement of fact.

Three questions were presented:

(1) Was the refinery operated by appellee a nonresident water consumer of the City of Covington?

(2) Were the rates and services of said city for water sold to consumers outside its corporate limits subject to the jurisdiction of the Public Service Commission under KRS Chapter 278?

(3) Was a justiciable issue presented as to the right of the city to dis-

continue water service to the refinery as a nonresident water consumer?

Appellee is an Ohio corporation with its home office in Cleveland, Ohio. Appellant is a city of the second class under the statutes of the Commonwealth of Kentucky. One phase of appellee's operations is conducted at a refinery located outside and adjacent to the corporate limits of appellant. Appellee is a taxpayer of appellant and owns other real estate lying within the boundary of the city. Water is carried from a point adjacent to the property owned by appellee in the city through a line into the refinery of appellee. The line which serves the refinery was installed at the cost of the city. At the request of appellant, the water meters for their protection were located within the manufacturing area of appellee and outside the city. Appellant's water plant is large and modern, with a daily capacity of 30 million gallons. It produces about 12 million gallons per day, of which one-half is sold to customers outside the city.

For many years past, appellee has been purchasing water in substantial quantities from appellant. At first, the water was sold under a contract at an industrial rate lower than the rate later set out by ordinance. This contract expired in 1948. The rates to be charged customers located both inside and outside the corporate limits of the city were fixed successively by three amendatory ordinances numbered: 0-11-46, passed March 21, 1946; 0-17-48, passed August 12, 1948; and 0-38-52, effective November 1, 1952. Under ordinance number 0-11-46, appellee would have been charged the same water rates as paid by resident customers except for the contract that expired in 1948. After expiration of the contract, appellee was charged at the nonresident consumer rate for water but refused to pay this charge and continued to pay at the same rate applicable to residents of the city. The difference in the amount of billings by appellant and payments made by appellee was $44,949.81 when appellant's answer and counterclaim were filed in this action.

■ It is necessary to construe the pertinent ordinances to determine whether appellee is a nonresident consumer of water. In construing a city ordinance, the court will look to the ordinances as a whole to ascertain the intention of the lawmaking body and the purpose sought to be accomplished thereby. Weyman v. City of Newport, 153 Ky. 487, 156 S.W. 109; Polsgrove v. Moss, 154 Ky. 408, 157 S.W. 1133; City of Mayfield v. Reed, 278 Ky. 5, 127 S.W.2d 847; 37 Am.Jur., Municipal Corporations, Section 187, Page 826.

Ordinance number 0-38-52, under which it is sought to charge appellee, uses this language:

"Any consumer, whether individual or corporate, located outside of the corporate limits of the City of Covington, to whom is supplied water by the City * * * shall be known and designated as a 'non-resident' Bulk user * * *."

Section 4 of this ordinance provides:

"There shall be charged for water supplied to consumers located outside of the corporate limits of the City of Covington to whom is supplied water * * *."

This is the part of the ordinance under which appellant is charging appellee for water. Similar language is used in the previous ordinances.

In Union Portland Cement Co. v. State Tax Commission, 110 Utah 135, 170 P.2d 164, 171, consumer was defined as: "'one who uses economic goods and so diminishes or destroys their utilities; opposed to producer; and "consume" means to use up, expend, waste, devour, with synonyms destroy, swallow up, engulf, absorb, waste, exhaust, spend, expend, squander, lavish, dissipate, burn up.'" This definition was approved in St. Paul & Tacoma Lumber Co. v. State, 40 Wash.2d 347, 243 P.2d 474.

The water used and consumed by the refinery was taken from the city main at a point inside the corporate limits of the

city in an area owned by appellee. The water meters were located in the manufacturing area of the refinery outside the city. Appellee argued that the point of consumption was where the water was taken from the water main in the city in order to entitle it to the lower rate as a resident of the city.

A consumer's meter outlet has been defined as the point where the consumer received gas after it had passed through a meter. United Natural Gas Co. v. Pennsylvania Public Utility Commission, 153 Pa. Super. 252, 33 A.2d 752.

In this instance, the water meters were located in the refinery admittedly outside the corporate limits of the city. The water was the economic goods used and its utility was diminished or destroyed by its use in the refinery after passing through the meter. Its utility remained the same from the time it entered the pipe on appellee's property inside the city until it passed through the meter outside the city and was then used or consumed.

We agree with the Chancellor that it was the intention of the lawmaking body of appellant to draw a geographical line of demarcation so that one who used water within the city limits would be a resident consumer of water to be charged a fixed rate, and one who used water outside the city limits would be a nonresident consumer to be charged a different rate. The judgment was correct in holding appellee to be a nonresident water consumer of appellant.

Having so determined the status of appellee, appellant was without authority to fix rates for furnishing water to appellee in the absence of compliance with the provisions of KRS Chapter 278. The establishment of utility rates for nonresident consumers of a municipally owned utility is within the jurisdiction of the Public Service Commission. City of Olive Hill v. Public Service Commission, 305 Ky. 249, 203 S.W.2d 68; Louisville Water Company, v. Preston Street Road Water District No. 1, Ky., 256 S.W.2d 26. By its judgment,

the lower court did not fix the water rates to be charged appellee but determined the method or means and the authority to do so. The ordinance was held to be ineffective only insofar as it sought to fix the rates for furnishing water to nonresident consumers of the City of Covington. Appellee's motion to amend the judgment herein to conform to the lower court's opinion is overruled.

It is urged by appellant that the enactment in 1954, by c. 18, of KRS Chapter 106 entitled "An Act relating to condemnation, purchase, financing and operation of waterworks by water districts or cities of second, third, fourth, fifth or sixth classes" exempted the establishment of all municipal water rates from the control of the public Service Commission. The contention is based on the wording of KRS 106.270, which is:

"Neither the Public Service Commission nor any other board, commission or agency of Kentucky shall, unless in the future expressly authorized, have any jurisdiction over such water district or municipality, operation, management and control of any water plant or water distribution system or appurtenances thereto, or any power or authority over the regulation of rates or charges."

A reading of the entire Act discloses that it provides that any water district created pursuant to KRS Chapter 74, or any class city except first class, may acquire and operate waterworks which may be located within or without the corporate limits of the district or city for the purpose of supplying the inhabitants thereof with water. KRS 106.010. Further, an express power is granted the governing body of the waterworks in KRS 106.210(2) that it "may provide water service to any user or consumer within and without the boundaries of said water district or municipality and may charge and collect reasonable rates therefor." There is nothing in the Act which compels any water district or city to acquire a waterworks under its provisions to the exclusion of some other statutory method. KRS 106.030 expressly pro-

vides that the Act shall not affect the provisions of any other laws providing any alternate plan for the acquisition and operation of water systems. Therefore, we conclude the Act is permissive.

The water system of appellant was acquired and had been operated under authority other than KRS Chapter 106 long before this chapter became effective in 1954. Prior to the enactment of KRS Chapter 106 and until its effective date, the Public Service Commission, under the City of Olive Hill and Preston Street Road Water District decisions, had jurisdiction to establish the water rates for nonresident water consumers of municipalities. Obviously, this Act had no application to the action of the appellant insofar as it sought to establish water rates to be paid by appellee prior to the effective date of the Act in 1954. To hold otherwise would give the Act a retroactive effect certainly not intended.

█ In the construction of a statute, the giving of a retroactive effect is not favored. Gunnels v. Stanley, 296 Ky. 662, 178 S.W. 2d 195. Such an effect will be given to the statute only when it is the manifest intention of the Legislature, or the statute clearly and strictly declares its retroactivity. Dumesnil v. Reeves, 283 Ky. 563, 142 S.W. 2d 132; Jackson v. Evans, 284 Ky. 748, 145 S.W.2d 1061; Lowther v. Peoples Bank, 293 Ky. 425, 169 S.W.2d 35.

█ The primary rule in construing a statute is to determine the legislative intent and purpose as gained from the language of the statute. City of Vanceburg v. Plummer, 275 Ky. 713, 122 S.W.2d 772; Moore v. Alsmiller, 289 Ky. 682, 160 S.W.2d 10; Burbank v. Sinclair Prairie Oil Co., 304 Ky. 833, 202 S.W.2d 420. Since the Act in question is permissive in its use and operation, to hold that its last section exempts waterworks operating under it from the jurisdiction of the Public Service Commission would have an effect which is not enjoyed or suffered, depending upon the viewpoint, by other waterworks systems, such as appellant's, created and operated under authority other than KRS Chapter

106. Had this Act been compulsory in its operation and effect as to all waterworks systems acquired or operated after its enactment, there would have been more force in appellant's argument. Since it is not compulsory and conflicting consequences may ensue, the statute should be construed so as to make it equitable and just. Asher v. Stacy, 299 Ky. 476, 185 S.W.2d 958. An interpretation which will lead to an absurd result will be avoided. Chilton v. Gividen, Ky., 246 S.W.2d 133. We feel the Chancellor's decision that KRS 106.270 does not apply to this controversy is correct.

Under the counterclaim of appellant, its right to discontinue water service to appellee was raised. Paragraphs 3 and 4 are quoted:

"3. Defendant is of the opinion that as a municipal water supplier to consumers located within and without the city, it has the right to discontinue water services to consumers located outside the corporate limits of the city, when in the opinion of the defendants' officials the furnishing of said water becomes odius or impractical or when said service would jeopardize the supply of water to its citizens.

"4. Plaintiff denies that defendant has the right to discontinue said service and thereby a real case and controversy exists."

The Chancellor held that no justiciable issue was presented by the pleadings or stipulations. No threat to discontinue the water service was shown. Only certain situations were suggested, none of which was alleged to exist or about to arise. In view of the water capacity and production of appellant and the fact that about one-half of the production was sold outside the city, it appears unlikely that any of the suggested situations were imminent.

█ There was no actual controversy presented concerning the right to discontinue services on which a binding judgment could be rendered. The court should not be called upon to decide specula-

tive rights or duties which may or may not arise in the future. Appellant urges that this question should be passed upon now because "the ripening seeds of controversy are present" and in order to prevent future litigation. The condition precedent to a declaration of rights is the existence of an actual controversy respecting a justiciable issue, rather than a prospective controversy. Black v. Elkhorn Coal Corporation, 233 Ky. 588, 26 S.W.2d 481; Jefferson County ex rel. Coleman v. Chilton, 236 Ky. 614, 33 S.W.2d 601; Commonwealth ex rel. Watkins v. Winchester Water Works Co., 303 Ky. 420, 197 S.W.2d 771.

The judgment of the lower court being correct, it is now affirmed.