## Carr's Fork Coal Co. v. Perry County Bd. of Supervisors, et al.

(Decided Feb. 14, 1936)

CRAFT & STANFILL for appellant.

D. B. WOOTON and JESSE MORGAN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming in part and reversing in part.

Both appellant and appellees on this appeal from

a judgment of the Perry circuit court attack the correctness of its judgment assessing the operating mining plant of appellant, including 1,800 acres of listed coal lands under which there are two seams of coal, one about 40 inches thick and the other about 3 feet thick, and all located in Perry county. The judgment appealed from fixed the valuation for taxing purposes of all of appellant's property as of July 1, 1932, at $169,150. Its officers in filling out the list furnished by the county tax commissioner placed the total valuation at $109,525, which the county tax commissioner raised and returned his schedule of a total valuation of the property at $185,600, and the county board of supervisors of Perry county, on its own motion, raised that sum to $205,600. From that raise by the board of county supervisors appellant appealed to the Perry quarterly court and on a hearing therein it approved the valuations fixed by the supervisors. From that order an appeal was prosecuted by appellant to the Perry circuit court, with the result indicated, and, from the judgment therein rendered, it prosecutes this appeal, and appellees moved for and were granted a cross-appeal. It will be seen that the route prescribed by section 4128 of the 1930 Edition of Carroll's Kentucky Statutes was duly traveled.

In the preparation of this opinion, we have not deemed it necessary to specifically refer to or incorporate all or any of the sections of our statutes bearing upon the subjects to which we shall refer, and which have for their purpose the correct assessment and valuation of taxable property for the purposes of obtaining public revenue, except in so far as it may become necessary for a correct understanding of the conclusions set forth. With this explanation we will now direct our attention to a determination of the questions raised on the appeal by both parties to the litigation; but, before doing so, it should be stated that appellant strenuously insists that all of the provided tribunals or agencies through which assessments for such purposes may travel (following the one made by the assessing officer) before becoming final, are limited in their powers and scope of review to only the separately valued items of the schedule returned by the county tax commissioner, except as to omitted property, as the first assessing officer, and that, as a consequence thereof, no item set forth in the schedule

may be reviewed or in any manner altered, if the one seeking the review or questioning the accuracy of the total assessment valuation fails to point out and specify his complaint or complaints, or if he expressly states his satisfaction with any item or items in such schedule and to which he does not object. Hence it it claimed that, where an appeal is prosecuted from the assessment as made by the county board of supervisors, only the items or valuations complained of on that appeal may be reviewed by the court to which the appeal is prosecuted, and that the same is true with reference to an appeal from the quarterly court to the circuit court. Likewise it is insisted by appellant that the taxing authority (the county by its fiscal court and board of supervisors in this case) is not permitted to question any item in the returned schedule if that particular item is not complained of by the taxpayer in his appeal to the quarterly court from the assessment as fixed by the county board of supervisors, unless its valuation is questioned on an appeal taken by such taxing authority. The same contention is made as to an appeal from the quarterly court to the circuit court.

In other words, it is insisted that the rules applicable to purely appellate practice for correction of errors only, are sought to be invoked and applied, on and at the hearing of appeals to quarterly and circuit courts in our provided processes for the final fixing of assessment valuations for taxation purposes, which processes, after leaving the county board of supervisors, are prescribed in the section (4128) of our Statutes, supra. We are cited to no case sustaining such contentions, and, when viewed in the light of the general purpose of the provided scheme for the accomplishment of the final result, we can discern no satisfactory reason for the contentions. All of such assessment provisions are but parts and parcels of the stair step process by which the rights of interested parties may be protected and enforced with reference to such matters and whereby the fairest and most correct determination may be reached through a resort to the multiplied agencies for accomplishing that end, each of which is charged with authority and duty to eliminate erroneous action operating detrimentally to either party. The county board of supervisors occupies no appellate relation to, nor exercises any such

jurisdiction over, the assessment as returned by the county tax commissioner. It has plenary power, and is vested with authority to act on the list returned by him on its own motion, and to review, change, and alter each item in his list if its members so conclude. When its work is ended, either party who is dissatisfied therewith may procure a review by the county quarterly court, when the whole assessment is then brought to that court for a new hearing, and the same consequence follows an appeal from its assessment to the circuit court, all of which is in complete accord with all other appeals in quarterly courts from inferior ones and from them to circuit courts in all actions within the jurisdiction of quarterly courts, whether brought to them by appeal or by original action filed therein. If a litigant in a court inferior to a quarterly court, in a case appealable to the latter court, is dissatisfied with the judgment of the inferior one and appeals to the quarterly court, the case is tried de novo by it, and the nonappealing litigant may relitigate any issue determined by the inferior court whether he appealed from its judgment or not, since his antagonist removed the entire case by his appeal to the quarterly court where each party became vested with the same rights that he possessed if the case had been originally brought in the appellate court. The same is true on appeals to the circuit court from quarterly and other courts where they are allowed, unless there is something in the remedial statute providing otherwise. There is nothing in our assessment statutes making such otherwise provisions. Hence our conclusion is that each party to a proceeding like this may try the case anew on appeals from assessments by the county board of supervisors to the quarterly court, and also on appeals from the latter to the circuit court. The necessity for the expressing of such conclusions will become apparent as the opinion proceeds.

The schedule made out by the appellant and taxpayer in this case was arrived at by first fixing the valuation of the leased coal lands at $1 per acre. That particular item was not disturbed by any of the assessing agencies or tribunals through which the litigation journeyed nor by the county board of supervisors, and the judge of the circuit court concluded from that fact that he had no jurisdiction to disturb that item and, of course, he reached the same conclusion as to

all other items in the schedule similarly situated. What we have hereinbefore said demonstrates that in so concluding the court was in error. It likewise held that, inasmuch as no appeal, throughout all of the provided processes, had been taken by any of the county authorities, no objections could be made by them (appellees here), except as to items complained of by appellant (the taxpayer) in the appeals that it prosecuted. What we have above said also demonstrates the error of that conclusion.

Having said this much, we will now proceed to a determination of the chief question affecting the merits of the case. It is: What is the correct method of arriving at the valuation of the property assessed for purposes of taxation? Section 172 of our Constitution prescribes that all taxable property "shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale." Section 4020 of our Statutes, supra, provides that all real and personal estates in this commonwealth "shall be subject to taxation unless the same be exempt from taxation by the Constitution, and shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale." There are other provisions with reference to valuing certain intangible rights, such as franchise right, and providing means whereby they may be valued and assessed for revenue purposes as against corporations or others possessing such franchise privileges; but mining companies are not within that class and their property is to be valued by all assessing authorities and agencies upon the basis of its market value as measured by what it would bring at a fair voluntary sale.

However, the authorities are abundant to the effect that, because of a lack or even a total absence of a willing purchaser, at the particular time for the fixing of the valuation, does not necessarily import that the property has no taxable value, solely because a willing purchaser might not be obtainable at that particular time. In such cases other facts may be looked to for the purpose of fixing a correct market valuation, although there may be a total absence of a voluntary purchaser. Among such factors, either in such contingency or in its absence, are the net revenue, dividend, or profit that may be realized upon the operation of a going mine, plant, or other manufacturing

concern, its prospects of continuing such operation and the prospective length of time thereof, the material at hand to be manufactured, mined, or produced in pursuing the purpose of the plant or establishment, the physical condition of the properties, including all of the different items composing the one unit of its productive plant, and many others, all of which make the processes by which a. correct valuation of such properties is made both difficult and unsatisfactory, and which is so expressly stated by Mr. Cooley on Taxation and other writers on the same subject including treatises on "Mines and Mining." See Cooley on Taxation, vol. 3, sec. 1150.

Many states have statutes providing methods and means—such as capitalization or other provisions—whereby a more satisfactory as well as a more accurate valuation may be obtained. We have none such in this jurisdiction, and which necessitates a resort to the methods stated, and to which the evidence of appellant in this case was not directed. It introduced three witnesses, its auditor, its superintendent, and a. mining engineer who constructed its plant in 1920. They took up in their testimony each item of property embracing that which was attached to the realty as. well as that which was not so attached and placed a. present valuation on them as though they possessed value disconnected from the plant.

When the list was gone through, the sum total of such valuation was the amount listed by appellant for taxation and the one that is now insisted on as the correct one on this appeal, and which, as we have stated, was $109,525. Illustrating the nature of testimony given by those witnesses—they were examined with reference to the value of miners' houses owned by appellant, which were 159 and containing in the aggregate of 655 rooms. Appellant rented them to its miners for about $1.50 per week. The valuations were made on each room, and ranged from $35 per room down to $20 per room. They then testified about office buildings, dining halls, garages, toolhouses, blacksmith shops, and every other conceivable structure forming units of the completed plant. In that manner they also fixed a valuation on the conveyor of coal from the top of the mountain to its foot, and which is a kind of trough built upon a concrete foundation. Only a secondhand valuation was placed on it

,as a distinct item of property. The same method was pursued in valuing the tipples, the mining railroad tracks, stationary and movable locomotives operated by either steam or electricity. Those witnesses finally took up and valued various tools, propping posts, cross-ties, rails, and even down to almost nails in the houses, and, after so separately valuing each item of property, they added the various amounts and obtained the sum total of the valuation of the whole plant as now in-sisted upon. Manifestly, that method of valuation, al-though to some extent pursuing the directions con-tained in the furnished schedules, is by no means the only correct or necessarily conclusive one in arriving at the result to be obtained, which is the valuation of the completed unit of property (the present operated plant) sought to be assessed. See 61 C. J. 772, sec. 1000.

That completed unit is composed of the value of the combined adjustment of the items to which we have referred, as parts of the producing unit and, clearly, each of them separately could not possibly possess any market value except as junk. Who, for instance, would want to purchase a tipple disconnected from all other operating contrivances provided in the plant for the extraction and marketing of coal? The purchaser of it as a separate item of property could not in all prob-ability dismantle and move it if he had a place to put it even if it cost him nothing. In no event could he move its most costly part, i. e., the concrete founda-tion. The same is true with reference to the conveyor and most all of the other separate articles dealt with by appellant's witnesses. The object in the detailed questions contained in the furnished schedules for the property owners to make out is not for the pur-pose of conforming to any specified enactment upon the subject as a part of an exclusive method in arriv-ing at the total valuation of the plant, but only to enable the final original assessing agency, which, in this case, is the county board of supervisors, to ar-rive at the total valuation of the entire property, and also, perhaps, for the purpose of classifying the prop-erty (i. e., whether realty or personalty) so as to de-termine the rate of taxation that it should bear, but which could serve no purpose except where each class of property is assessed at a different rate.

Appellees introduced in the circuit court three witnesses who claimed to be familiar with the market value of coal mining plants within the territory of the one owned by appellant and also with the general condition of the latter, as well as with its productive capacity, which was 33 loaded cars per day. They also stated that they were familiar with the condition of many of the different units of appellant's plant but not familiar with all of them, nor with all of the different articles of its machinery; but they each heard the testimony of appellant's witnesses as to such matters, and they fixed the valuation of appellant's plant in conformity with the constitutional and the statutory requirements, supra, at not less than $200,000. The judge of the circuit court, as we have seen, was convinced, and so expressed himself, that the valuation of the acreage of mineral in which appellant possessed the exclusive mining rights was assessed entirely too low, but concluded, for the reasons above stated, that he had no right to interfere with it. There was no evidence introduced in that court to prove what would be its correct valuation, and for which reason the court left it as made in arriving at the valuation of the entire plant. The court called attention to the fact that all of the miners' houses, the number of which we have stated, yielded a gross yearly income of $13,165.50, and were valued by appellant's witnesses in the manner stated at $22,925. Those two items clearly indicate the grossly small valuation placed upon them by appellant's witnesses, and a consideration in detail of other items leads to a similar conclusion with reference to them, all of which illustrates the fallacious theory advanced by counsel for appellant in substantiation of the method of valuation for which its counsel contend.

We have been cited to no cases in conflict with what we have said. On the contrary, our opinions, to the extent that they deal with the questions here involved, approve our foregoing conclusions, one of which is Eminence Distillery Co. v. Henry County Board of Supervisors, 178 Ky. 811, 200 S. W. 347. An analogous principle in conformity with our conclusion with reference to the valuation of an operating coal plant as a whole for purposes of taxation was approved in our opinion in the case of Wakenva Coal Co. v. Johnson, 234 Ky. 558, 28 S. W. (2d) 737, 744,

but in which the question was raised in a different character of litigation. It was a suit to foreclose a lien to secure a debt and which existed on all of the property composing the completed plant of the debtor, and the question was whether articles of personal property as units in the completed plant should be taken into consideration in the appraisement of the realty which also formed a part of the mortgaged property. We held that it should be, and in doing so said: "Here the land and the personalty essential to the operation of the plant constitute a unit."

Further along in the opinion, in expressing the same conclusion, we said: "The leasehold with the personal property, such as cars, motors, etc., used with it, and without which the plant could not be operated, should be considered an entirety, and appraised and sold as a whole."

As the plant was in lien in that case and was to be sold as such and to be treated as a unit composed of its various items, whether realty or personalty, so in this case should it be so treated and valued for the purpose of satisfying the right of the commonwealth and other taxing agencies to require it to contribute its proportionate part of the public revenue.

What that entire valuation is and the means and methods by which it may be arrived at furnishes the only perplexing question in the case and to which we have hereinbefore referred; but, in the absence of some statutory method, the one herein outlined is the best that can be devised, and which we conclude is the one to be pursued. We are convinced, from the testimony in this case bearing upon the question of correct valuation, that plaintiff's plant, including its leasehold interest, its potential production prospects, the general state of repair of buildings, machinery, etc., and everything considered, is subject to assessment at the low valuation of $200,000, and which corresponds to the lowest estimate placed upon it by the witnesses who testified for appellees.

Wherefore the judgment is affirmed on the appeal and reversed on the cross-appeal, with directions for the Perry circuit court to enter one in conformity herewith, and containing the proper corrections and certifications thereof to the proper tax collecting authorities.