# Dumesnil et al. v. Reeves, Com'r of Rev., et al.

June 21, 1940.

W. B. Ardery, Judge.

564

Dodd & Dodd for appellants.

Hubert Meredith, Attorney General, and M. B. Holifield and A. E. Funk, Assistant Attorneys General, for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

The executors of Harry Dumesnil, who died February 4, 1937, filed an inheritance tax return with the Department of Revenue and paid taxes on the estate amounting to approximately $20,000. At the time of his death the decedent had life insurance policies in the amount of $52,118.85, all taken out many years prior to the year 1936, payable to his wife as beneficiary with the right in the decedent to change the beneficiary. These policies were reported in the inheritance tax report but were deducted as a nontaxable item. The decedent was the owner of 616 shares of common stock in the Carter Dry Goods Company, valued at $90 per share in the inheritance tax report, and was also the owner of 1,600 shares of common stock of the Fourth Avenue Amusement Company, valued at $4 per share.

The Department of Revenue determined that the proceeds of the insurance policies, subject to a $10,000 exemption, were taxable and increased the value of the Carter Dry Goods Company stock to $125 per share and increased the value of the Fourth Avenue Amuse-

ment Company stock to $10 a share, which actions on the part of the Department resulted in an increase of $5,551.56 in the amount of inheritance taxes due on the estate.

Within the time provided by law the executors petitioned the Tax Commission for review and redetermination of the tax and on this hearing the actions of the Department of Revenue were approved except that the Commission reduced the value of the Fourth Avenue Amusement Company stock from $10 per share to $8 per share.

Within the time provided by law an appeal was filed in the Franklin Circuit Court and that court sustained the findings of the Tax Commission and dismissed the appeal. Two questions are thus presented for decision, 1) the right of the Department of Revenue to impose an inheritance tax upon life insurance policies, payable to a designated beneficiary with a right on the part of the insured to change the beneficiary, taken out prior to the passage of the 1936 Act (Kentucky Statutes, Section. 4281a-16) authorizing the levy of an inheritance tax upon life insurance generally and 2) the determination of the value of the capital stock in the two corporations.

The Act of 1936 referred to, Kentucky Statutes, Section 4281a-16, provides in substance that the proceeds of life insurance policies, subject to an exemption of $10,000, whether payable to a designated beneficiary or to the assured or his estate, shall be taxable as a part of the estate of the assured. It is contended by appellants that the action of the Department of Revenue in applying this statute to the insurance policies in question taken out prior to the passage of the Act and made payable to a designated beneficiary, is violative of the due process clause of the 14th Amendment to the Federal Constitution, and also violative of the provision· of the Federal Constitution prohibiting any state from passing any laws impairing the obligation of contracts. Article 1, Section 10. It is also claimed that such action is violative of the prohibition of our bill of rights and Section 59 of our state constitution. Chief reliance is placed by appellants on the two cases of Lewellyn v. Frick, 268 U. S. 238, 45 S. Ct. 487, 69 L. Ed. 934, and Bingham v. United States, 296 U. S. 211, 56 S. Ct. 180, 80 L. Ed. 160. In the first of these two cases it was held

that the proceeds of policies on the life of Frick which had been assigned to his wife and daughter with power reserved in Frick to revoke the assignment, and which were taken out prior to the passage of an act of Congress in substance similar to Kentucky Statutes, Section 4281a-16, were not taxable for Federal Estate Tax purposes. In the opinion it was said by the Supreme Court [268 U. S. 238, 45 S. Ct. 488, 69 L. Ed. 934] :

"We do not propose to discuss the limits of the powers of Congress in cases like the present. It is enough to point out that at least there would be a very serious question to be answered before Mrs. Frick and Miss Frick could be made to pay a tax on the transfer of his estate by Mr. Frick. There would be another if the provisions for the liability of beneficiaries were held to be separable and it was proposed to make the estate pay a transfer tax for property that Mr. Frick did not transfer. Acts of Congress are to be construed if possible in such a way as to avoid grave doubts of this kind. Panama R. R. Co. v. Johnson, 264 U. S. 375, 390, 44 S. Ct. 391, 68 L. Ed. 748. Not only are such doubts avoided by construing the statute as referring only to transactions taking place after it was passed, but the general principle 'that laws are not to be considered as applying to cases which arise before their passage' is preserved, when to disregard it would be to impose an unexpected liability that if known might have induced those concerned to avoid it and to use their money in other ways."

Subsequent to the decision in this case it was decided in Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388, that where a decedent procured policies after the passage of the Federal statute, the policies being payable to his wife with the right reserved to change the beneficiary, the proceeds of the policies were subject to the Federal Estate Tax. After the decision in the latter case the Circuit Court of Appeals for the First Circuit in United States v. Bingham, 77 F. (2d) 573, held that although policies were issued prior to the enactment of the Federal statute, payable to a designated beneficiary, the proceeds thereof were subject to the Federal Estate Tax if the insured retained a degree of control of the policies. The Circuit Court of Appeals proceeded on the

assumption that the Supreme Court in the Frick case did not decide that policies taken out before the effective date of the Federal statute, with a degree of control over the policies retained by the insured, were not taxable since the opinion in the Frick case did not point out that as to one of the classes of policies involved the insured retained the right to revoke the assignment. This decision was reversed in Bingham v. United States, 296 U. S. 211, 56 S. Ct. 180, 80 L. Ed. 160, and in the opinion it was pointed out that all facts were clearly before the Court in the Frick case and that the Frick case held that *none* of the policies were subject to the estate tax. Apparently, therefore, the Supreme Court has construed the Federal statute making the proceeds of insurance policies a part of the insured's estate for estate tax purposes inapplicable to policies taken out before its effective date. It is further apparent, however, that neither in the Frick case nor in the Bingham case was it held that the application of the statute to policies taken out prior to its effective date was unconstitutional. The Supreme Court in those cases merely said that there was doubt as to the constitutionality of the statute if it was applied to policies taken out prior thereto and that such doubts would be avoided by construing the statute as referring only to transactions taking place after it was passed. In the present case, however, we have no doubt that a proper construction of our statute, Kentucky Statutes, Section 4281a-16, is that the Legislature intended it to apply to all policies whether taken out before or after its effective date. The language of the statute is plain and unambiguous and we will not imply an intent on the part of the Legislature to except from its operation policies theretofore taken out but will proceed to determine whether or not it is unconstitutional when so applied. It is true that statutes are not to be given a retroactive effect, even where the Legislature has power to enact such a statute, unless such an intention clearly appears from the statute itself (Dunlap v. Littell, 200 Ky. 595, 255 S. W. 280) but a retroactive effect is obtained only when a statute is applied to rights acquired prior to its enactment. As applied to the policies in question no vested rights are impaired as will be later pointed out.

Before proceeding to a determination of the constitutionality of the statute as applied to the policies in

question, it may be pertinent to point out that in neither the Frick case nor the Bingham case was the Supreme Court concerned with policies in which the insured reserved a right to change the beneficiary. The policies involved in both of those cases were policies which had been assigned by the insured with some degree of control reserved in the insured. In the Bingham case there were two separate bases on which the opinion was rested, the first basis being the principle of statutory construction above pointed out and the second basis that contained in the concluding paragraph of the opinion as follows [296 U. S. 211, 56 S. Ct. 181, 80 L. Ed. 160]:

"The principles so recently announced by this court in *Helvering v. St. Louis Union Trust Co., et al.* (November 11, 1935) 296 U. S. 39, 56 S. Ct. 74, 80 L. Ed. 29 [100 A. L. R. 1239], and *Becker v. St. Louis Union Trust Co.* et al. (November 11, 1935), 296 U. S. 48, 56 S. Ct. 78, 80 L. Ed. 35, are decisive of the case in favor of the taxpayers. Those principles establish that the title and possession of the beneficiary were fixed by the terms of the policies and assignments thereof, beyond the power of the insured to affect, many years before the act here in question was passed. No interest passed to the beneficiary as the result of the death of the insured. His death merely put an end to the possibility that the predecease of his wife would give a different direction to the payment of the policies."

Thus it will be seen that even in the later case the Supreme Court was proceeding on the assumption "that the title and possession of the beneficiary were fixed by the terms of the policies and assignments thereof, beyond the power of the insured to affect.' Whether or not there was a difference between policies assigned with a right to revoke the assignment and policies in which the right to change the beneficiary was reserved was not made clear in the Frick and Bingham cases but in any event the specific question before us was not involved in those cases since the policies there involved did not reserve to the insured the right to change the beneficiary. The decision in the Bingham case was a 5-4 decision and was concurred in by the Chief Justice who acquiesced in the second ground of the decision be-

cause of the recent decisions in the two cases there mentioned. Since the decision of the Bingham case the later case of Helvering v. Hallock, 309 U. S. 106, 60 S. Ct. 444, 84 L. Ed. ..., 125 A. L. R. 1368, has overruled the two cases cited as the basis of the second ground of the decision. In the Hallock case, which held that a reservation in the creator of a trust inter vivos of an interest contingent on surviving the primary beneficiary renders the trust property subject to the Federal Estate Tax, pursuant to the provisions of 26 U. S. C. A. Int. Rev. Code, Section 411, the court took a much more liberal view towards bringing property within the ambit of taxing statutes than it had theretofore taken and in commenting on the decision in Klein v. United States, 283 U. S. 231, 51 S. Ct. 398, 75 L. Ed. 996, said that the court had there fastened on the vital factor by bringing into the gross estate at the settlor's death that which he gave contingently upon it. Our review of the Federal cases convinces us that that court would not now hold that the imposition of the inheritance tax on the proceeds of the policies in question under the Kentucky Statute was unconstitutional.

In considering the constitutionality of the Kentucky Statute in its application to the policies involved we must determine whether or not any vested rights were obtained by the beneficiaries of the policies by being designated as beneficiaries with the right reserved in the insured to change the beneficiary. We find that the almost universal rule is that where a right to change the beneficiary has been reserved to the insured in the policy the beneficiary named has a mere expectancy and no vested right or interest during the lifetime of the insured, this rule being subject to the qualifications, of course, that the beneficiary may acquire a vested right by virtue of some type of special contract. 37 C. J. 579; 14 R. C. L. 1388; Landrum v. Landrum's Adm'x, 186 Ky. 775, 218 S. W. 274; Wirgman v. Miller, 98 Ky. 620, 33 S. W. 937; Mutual Life Ins. Co. v. Twyman, 122 Ky. 513, 92 S. W. 335, 121 Am. St. Rep. 471, 28 Ky. Law Rep. 1153, 1157; Bright v. Supreme Council of C. K. and L. A. et al., 183 Ky. 388, 209 S. W. 379; Twyman v. Twyman, 201 Ky. 102, 255 S. W. 1031; Chase National Bank v. United States, supra. In the last cited case the Supreme Court, in speaking of policies in which the insured reserved the right to change the beneficiary, said

[278 U. S. 327, 49 S. Ct. 127, 73 L. Ed. 405, 63 A. L. R. 388]:

> "But until the moment of death the decedent retained a legal interest in the policies which gave him the power of disposition of them and their proceeds, as completely as if he were himself the beneficiary of them."

The court in that case, in speaking of the power of control over such policies retained by an insured, said that such power "is by no means the least substantial of the legal incident of ownership, and its termination at his death so as to free the beneficiaries of the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death." Since the beneficiary in the policies in question here acquired no vested right but only a mere expectancy by being designated as beneficiary we fail to see wherein the statute in question, when applied to the policies in controversy, impairs the obligation of a contract or results in a violation of the due process clause' of the 14th amendment to the Federal Constitution or any provision of our state constitution.

We turn now to the question of the valuation of the stock in the two corporations. On the review by the Tax Commission evidence was heard on this question and this was the evidence considered by the trial court, since no additional evidence was there offered or introduced. Edward H. Hilliard, a broker of Louisville, after an examination of audits of the Carter Dry Goods Company, stated that $90 per share was a fair valuation of this stock. Rowland Dumesnil testified as to the purchase of stock in this company by him to the extent of 161 shares since the year 1930, the highest amount paid by him being $115 per share. Only 46 shares were purchased by him within three years prior to the decedent's death. It was shown that stock in the same company had never been previously valued at more than $90 per share in other inheritance tax cases and that in one instance in the year 1935 it was valued at $50 per share. Miss Lutkemeier, an employee of the Revenue Department, explained this, however, by stating that up to the time of the reorganization of the Revenue Department the assessment of stock by the Department had been on

a hit and miss basis and that the Department had formerly relied merely on reports by local agents. It was also established that the Federal Estate Tax authorities accepted a valuation of $90 per share. The only evidence introduced for the Commonwealth was that of two auditors who examined the audits of the Carter Dry Goods Company filed with the Department and who testify from this examination that the fair value of the stock was $150 per share.

It appears from an audit of this company made approximately three months before the decedent's death that it had an earned surplus of more than $700,000, an inventory of more than $500,000 and cash assets as land and buildings of more than $146,000. The president of the company admitted that the inventory could be disposed of for at least fifty per cent of its book value. It also had cash on hand exceeding $131,000. This audit shows a book value of total assets in excess of $1,387,000 and total liabilities, excluding capital stock and surplus, of only $93,000, the cash on hand being considerably in excess of all current liabilities.

After a careful consideration of the evidence we are not prepared to say that the finding of the Tax Commission and the trial court was not justified. The chancellor has made a finding on this issue and we are not at liberty to disturb his finding where our mind is merely left in doubt, which is the situation in which we find ourselves as to this issue. It is contended by appellants that Section 172 of the State Constitution furnishes the proper method of valuation of property for tax purposes, which is true. That section provides that all property "shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale." If the evidence were sufficient to establish a fair market value of the stock, that value would, of course, be the value to be adopted for taxing purposes but in the three years before the decedent's death sales of only 46 shares, out of a total of 6,000 shares of stock in the company, were shown. This was obviously insufficient to establish a fair market value of the stock and, this being the case, the Tax Commission was not bound by the purchase price shown on this small number of sales but was entitled to consider other evidence in connection therewith and it appears to us that

their consideration of the book value of the company's assets, taken in connection with the few sales shown to have been made, justified them in fixing the value of the stock at $125 per share. The Tax Commission being the tribunal on whom is imposed by law the duty of fixing a valuation for tax purposes, the burden rested on the taxpayer to establish that the finding of the Commission was at variance with the evidence before it (Southern Railway Co. v. Frankfort Distillery et al., 233 Ky. 771, 26 S. W. (2d) 1025) and this the taxpayer did not do. The appellants were at liberty to introduce evidence to establish that the actual value of the corporation's assets was far below the book value thereof but this was not done and in the absence of such evidence the Tax Commission was justified in considering this book value in connection with the other evidence to establish the fair cash value of the stock estimated at the price it would bring at a fair, voluntary sale. Considering book value alone, a value of more than $150 per share was established and the most that we can say in behalf of appellant's contention is that on this issue our mind is left in doubt.

As to the stock in the Fourth Avenue Amusement Company, the appellants are in a less favorable attitude to question the finding of the Tax Commission than they were as to the Carter Dry Goods Company stock. No sales of this stock were shown and the book value of the stock was shown to be more than $13 per share. In the absence of evidence satisfactorily demonstrating that the assets of the corporation were far below the book value we cannot say that the Tax Commission was not justified in placing a value of $8 per share on the stock.

Judgment affirmed.

The Whole Court sitting, except Judge Rees.