## Evans v. Boyle County Board of Sup'rs.

Jan. 11, 1944.

354

Nelson D. Rodes for appellant.

P. J. Clarke and Earl S. Wilson and Smith & Leary for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON—Affirming.

The appellant, Mrs. Lillian S. Evans, shortly prior to July 1, 1940, conveyed to Centre College real estate valued at $82,510. At the same time, and as a part of the same transaction, she agreed to bequeath and devise to the same institution all of her property (estimated at more than $200,000), except personal belongings and a sum not to exceed $25,000, and agreed not to diminish her estate by gifts. As consideration, Centre College obligated itself to pay Mrs. Evans $900 per month as long as she should live and further agreed to hold her harmless against any ad valorem tax that might be imposed on this obligation. In substance, Mrs. Evans paid and agreed to pay to Centre College $282,510 for its agreement to pay her $900 per month as long as she should live.

As of July 1, 1940, Mrs. Evans assessed her annuity contract at $1,000 for purposes of ad valorem taxation. The Boyle County Board of Supervisors increased this valuation to $85,780. On appeal to the quarterly court the valuation was reduced to $45,493. On appeal to the circuit court it was held that the taxable value should be determined according to the mortality table. From

the American Experience mortality table, showing expectation of life, it was ascertained that Mrs. Evans' expectancy at the age of sixty-five was eleven and one-tenth years. The present value of her annual income of $10,800 was then ascertained from the Giauque & McClure Present Value Tables to be $85,278.52, capitalized at 6%, and judgment was accordingly entered fixing the latter amount as the taxable value of the annuity contract. This appeal is from that judgment.

No question is raised as to the taxability of the appellant's property right, counsel for appellant apparently recognizing that any such question was concluded by our decision in Com. v. Sutcliffe, 283 Ky. 274, 140 S. W. (2d) 1028, as implemented by Com. v. Sutcliffe (second appeal) 287 Ky. 809, 155 S. W. (2d) 243. Indeed, as indicated above, the appellant voluntarily listed this property right for taxation at a valuation of $1,000.

It is most earnestly and ably contended, however, that Section 172 of the Constitution and KRS 132.190 set up the exclusive formula or method for valuing property for taxation, that formula being its "fair cash value, estimated at the price it would bring at a fair voluntary sale," and that in rejecting the evidence of witnesses as to value and fixing valuation according to the mortality tables, the formula or method for assessing property for taxation provided by the Constitution is squarely violated. Some witnesses testified the property was worth $5,000; others, that it was worth "possibly in the neighborhood of fifteen hundred or two thousand dollars, twenty-five hundred dollars, somewhere in that neighborhood." According to all witnesses the value fixed by them was purely speculative.

We regard the question thus raised as settled on the second appeal of the Sutcliffe case, but, in view of the great earnestness with which the question is presented, we have concluded to supplement to some extent the opinion in that case. We may begin by saying that we do not regard the Sutcliffe case as holding, as is insisted by the appellant, that the valuation of the property right there involved should be ascertained from the mortality table merely because such right was terminable by a sale or an attempted sale. Such a view of the scope of the Sutcliffe case is too restricted.

While certain isolated portions of the opinion rather tend to support this view, analysis of the opinion as a whole discloses that the holding was that such estates should be valued according to the mortality table and that in doing so the terminable feature of the right or estate should be ignored.

In the Sutcliffe case we failed to point out that a property right similar to the one here involved was held to be taxable according to mortality table value in Com. v. Nute, 115 Ky. 239, 72 S. W. 1090, 1091. There a tax payer owned an interest in land which she sold for $500 payable annually during her life. The court said: ''The appellee should have listed this obligation according to its present value for each year according to the life table. If she had retained her dower interest in the land, she would have been compelled to pay taxes on it, and this obligation represented her interest therein.'' That case is almost identical in fact and principle with the one now before us, though, in fairness, it must be admitted there was no discussion of the question here presented.

While Section 172 of the Constitution provides that property ''shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale,'' it is a mere dogmatism to say that in approving the use of mortality tables to fix the value of the kind of property here involved we are overriding the plain mandate of the Constitution. The chief concern of the makers of the Constitution in adopting this provision, as is revealed by the Constitutional Debates, was that every species of property should be taxed and bear its just proportion of the tax load. The Constitution makers were providing, not an empirical formula to shackle the taxing authorities and the courts, but the best method known to them by which to arrive at fair cash value. The method of estimation is a question that addresses itself to the courts. In rejecting the highly unsatisfactory and purely speculative testimony of witnesses as to fair cash value and looking to the mortality tables as the best, and only satisfactory, evidence to be had, the courts are dealing with purely evidentiary matters. The Constitution provides how fair cash value shall be estimated, that is, by the amount the property would bring at a fair voluntary sale, but to the courts was left the evidentiary feature, the kind,

character and sufficiency of the evidence to establish the estimate. This court gave partial recognition to this principle in Alexander's Ex'x v. Bradley, 66 Ky. 667, 3 Bush 667. It was there held that the only satisfactory evidence of the value of a life estate was the life tables, which the courts had adopted "as matter of law and legal criterion." The court said: "The opinion of even intelligent witnesses as to the cash value of a life estate, furnishes no criterion for the courts. It is, in fact, a subject of which they are less qualified to judge than the courts." In the absence of specific constitution or legislative fiat to the contrary, the courts have always exercised the prerogative of determining the relevancy, competency and sufficiency of evidence. It is but a mere exercise of this prerogative when we say that for the purpose before us we will reject purely speculative opinion evidence in favor of a known and proven criterion. That such evidence is purely speculative is beyond question, since we are dealing with a species of property not only having no established market value but rarely, if ever, the subject of sale.

It is argued that the fixing of value by use of the mortality table does not always, and seldom will, result in reflecting the true value of a life interest. This may be conceded, but it is equally true that values thus established will in the long run more closely approximate true values than would a fixation based on purely speculative opinion evidence. In an isolated case the value thus fixed may turn out to be wide of the mark, it may so happen here, but when a number of cases are considered the mortality tables will reflect true values. Exact equality in taxation is not possible and is not required. The strict letter of Section 172 has been consistently disregarded in efforts to effectuate its spirit and bring about uniformity in taxation, uniformity being one of the main concerns of the makers of the constitution. City of Louisville v. Martin, 284 Ky. 490, 144 S. W. (2d) 1034. To hold such property as that in question to be taxable and then tie the hands of the taxing authorities by requiring them to accept purely speculative opinions of witnesses as to value would be an empty gesture, signifying nothing.

We again conclude that the use of the mortality tables is the only feasible and practicable solution of the problem and is the only method by which even a

fair degree of uniformity in the taxation of such property may be secured. As indicated above, we think this conclusion does no violence to the Constitution, certainly no violence to its spirit.

It is impliedly suggested in the brief for appellant that, if valuation is to be according to the mortality tables, this valuation should be decreased on account of the condition of appellant's health, it being said that the evidence discloses her physical resistance to be below the normal for a person of her age. But, even if an abnormal physical condition of the taxpayer warranted such a deviation, a debatable proposition, we think the evidence was wholly insufficient to warrant it here.

Affirmed.

Whole court sitting.