## Larue County Board of Sup'rs et al. v. Lincoln Nat. Bank of Hodgenville.

May 15, 1945.

**8**

Eldon S. Dummit, Attorney General, and Roy W. House, Assistant Attorney General, for appellants.

Mather & Mather for appellee.

OPINION OF THE COURT BY JUDGE HARRIS—Affirming.

The appellee bank has a capital of $55,000, divided into 550 shares of the par value of $100 each. The question presented by this appeal is whether this stock, as of July 1, 1943, should be assessed for taxes at a value of $110,000, as listed by the bank and adjudged by the circuit court, or at $160,219 as contended by the appellants.

The parties are agreed, as well they should be, that the value which should be fixed for taxing purposes is that prescribed by section 172 of the Constitution: "its fair cash value, estimated at the price it would bring at a fair voluntary sale." It is with respect to the method which should be employed in making that estimate that the parties come to grips. It seems that the Department of Revenue has devised a formula—based on earnings, book value, and other pertinent information—which it uses in those instances in which the sales of a given corporation's stock have not been sufficient in numbers and frequency to constitute a fair criterion. And it is the contention of the appellants that, in the light of the evidence and on the authority of Board of Supervisors of Somerset v. Farmers National Bank of Somerset, 293 Ky. 157, 168 S. W. 2d 371; Greensburg Deposit Bank v. Commonwealth, 230 Ky. 798, 20 S. W. 2d 979; Dumesnil v. Reeves, Commissioner of Revenue, 283 Ky. 563, 142 S. W. 2d 132; Phillips v. United States, D. C., 12 F. 2d 598; Walter v. Duffy, 3 Cir., 287 F. 41; Frank v. Kay, State Treasurer, 123 Or. 286, 261 P. 893, 57 A. L. R. 1155; City of Louisville v. Martin, 284 Ky. 490, 144 S. W. 2d 1034; Evans v. Boyle County Board of Supervisors, 296 Ky. 353, 177 S. W. 2d 137; Carr's Fork Coal Co. v. Perry County Board of Supervisors, 263 Ky. 642, 93 S. W. 2d 359, this is one of those instances.

The appellants are in error. The evidence shows without contradiction that 36 shares of the appellee's

stock were sold in five different transactions between May 1, 1941, and June 17, 1943, at prices ranging from $180 to $200 a share, and that during the entire history of the bank its stock has never sold above $200 a share. The evidence further shows without contradiction that these five transactions were free and voluntary, and that in each instance, save perhaps one, both the seller and the buyer were thoroughly familiar with the bank's condition—its assets, its liabilities, its surplus, its earnings, and such other facts and circumstances as are reckoned with in appellants' formula. And clearly there can be no better evidence of what price given corporate stocks will bring at a fair voluntary sale than evidence of what such stocks have been bringing, and bring, without exception, at free voluntary sales. Certainly appellants' cited cases, which we shall now consider, do not justify the application of a different rule.

In the cited Greensburg Deposit Bank case the evidence dealt principally with capital, surplus and undivided profits. With reference to actual sales of the bank's stocks, the evidence was meager and confined to isolated transactions. In sustaining the trial court under these facts, we said that the fair cash value of the bank's shares of stock was a matter to be determined on all the facts, and that the price at which a share sold now and then was not conclusive. We did not undertake to prescribe a criterion for determining when sales are insufficient in numbers and diversity to establish value. We merely declared, in effect, that when the sales are not sufficient in point of time and numbers to constitute a controlling measure of value, then other factors, such as capital, surplus, etc., may be considered. The question of whether in a given case there have been sufficient sales to establish a market value is one of fact, to be decided upon the evidence in the particular case.

To this identical effect are our rulings in Dumesnil v. Reeves, Commissioner, and in Board of Supervisors v. Farmers National Bank of Somerset. In the former we said [283 Ky. 563, 142 S. W. 2d 136]: ''It is contended by appellants that section 172 of the State Constitution furnishes the proper method of valuation of property for tax purposes, which is true. That section provides that all property 'shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale.' If the evidence were

sufficient to establish a fair market value of the stock, that value would, of course, be the value to be adopted for taxing purposes but in the three years before the decedent's death sales of only 46 shares, out of a total of 6,000 shares of stock in the company, were shown.''

In the latter case, that of Board of Supervisors v. Farmers National Bank [293 Ky. 157, 168 S. W. 2d 372], we expressly stated: ''Notwithstanding the book values of the stock, the assessing officers and we are bound by the constitutional measure of valuation * * *. The evidence of voluntary sales of such number and diversity as was presented establishes with reasonable certainty that the value of this stock did not exceed $100 a share, or the aggregate of $100,000.''

In the case of the City of Louisville v. Martin—which went out on demurrer—we were dealing with the assessment of a huge number of cases of whisky. Due to differences in age and to other factors, there was no uniformity in value. In commenting upon the action of the tax commissioner in making an assessment on the basis of aggregate value, we did say that in applying the constitutional yardstick all taxpayers should be treated alike, and that there should be no discrimination between different classes of property. We also said, as quoted in appellant's brief: ''It has never been regarded as impractical or illegal for assessing authorities to fix a value upon one class of property as a whole. As for example, in assessing a large herd of cattle, some worth much more than others, it would be unnecessary and impractical to attempt to assess each head separately but the requirements of the law would be met by striking an average or fixing the value of the herd as a whole.'' Neither the language quoted nor anything that we said in that opinion is susceptible of the construction that property may be lawfully assessed above its fair and reasonable value. If a farmer has 10 cattle of the value of $50 each, and 10 of the value of $100 each, it follows that the value of the herd is $1500, and for the taxing authorities to so assess the value of the herd would in no wise contravene the constitutional provision, supra.

The cited case of Evans v. Boyle County Board of Supervisors is not in point. In that instance we were dealing with methods for determining the taxable value of an annuity—a species of property which is a stranger

to the marts of trade and commerce and which, from its very nature, is not susceptible of valuation on the basis of usual standards.

In the Carr's Fork Coal Co. case the question presented was that of the method which should be employed in fixing the taxable value of a mining plant which included 1800 acres of coal land, 150 residence buildings, and all machinery and equipment whether attached to the land or not. In answering that question, we used the language which is relied upon in appellants' brief:

"However, the authorities are abundant to the effect that, because of a lack or even a total absence of a willing purchaser, at the particular time for the fixing of valuation, does not necessarily import that the property has no taxable value, solely because a willing purchaser might not be obtainable at that particular time. In such cases other facts may be looked to for the purpose of fixing a correct market valuation, although there may be a total absence of a voluntary purchaser."

We do not interpret that statement as being to any extent inconsistent with the principle that the best evidence of the fair market value of a given item of property is what it sells for at a fair and voluntary sale.

In the light of our constitutional provision and our decisions construing and applying it, the appellants' cited foreign authorities are not applicable, and we shall not extend this opinion by analyzing them.

Judgment affirmed.