**COMMONWEALTH of Kentucky et al.,
Appellants,**

v.

**The KROGER COMPANY and Kentucky
Board of Tax Appeals Consisting of
James T. Lansden et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 12, 1973.

Rehearing Denied Feb. 8, 1974.

S. Tilford Payne, Jr., Louisville, for appellants.

Carl Arthur Henlein, Jefferson D. Stewart, III, Louisville, for appellees.

CULLEN, Commissioner.

The Property Valuation Administrator (hereinafter PVA) of Jefferson County, in making the January 1, 1968, assessment for property taxes, placed an assessment of $1,604,480 on the *tangible* personal property of The Kroger Company (hereinafter Kroger) consisting primarily of operating equipment in Kroger's 26 retail stores in Jefferson County. Kroger appealed the assessment to the county board of supervisors, which upheld the assessment. Kroger then appealed to the Kentucky Board of Tax Appeals, which reduced the assessment to $1,014,949. PVA appealed that decision to the Jefferson Circuit Court, where judgment was entered upholding the decision. PVA has appealed here from that judgment.

The issues relate to the validity and conclusiveness of a formula used by PVA for *estimating* the fair cash value of equipment used in commercial operations. The formula is designed to determine value for *each item* of equipment. The base of the formula is the in-place *acquisition cost*. For each year of the first five years of ownership the cost is depreciated 10 percent, so that a five-year-old item is valued at 50 percent of cost. But the depreciation progression stops at the five-year mark, the 50-percent level being treated as a

*floor,* so that any item over five years in use is valued at 50 percent of cost, no matter how many years over five it has been in use.

Kroger introduced evidence before the Board of Tax Appeals (which under KRS 131.340 heard the matter de novo) that *actual sales* of used grocery-store equipment in the over-five-year category produced an average price of five to eight percent of cost; that an *auction* sale of the entire equipment of a discontinued Kroger store in Jefferson County brought a net average price of only five percent of cost; and that there is an established market in Jefferson County for used grocery-store equipment. Kroger further put on an auctioneer and appraiser, who for many years had dealt in grocery-store equipment, and who testified that he had personally examined each item of equipment in three representative Kroger stores in Louisville, that he was acquainted with the fair cash value of such equipment; that he had appraised the equipment and the average market value shown by that appraisal for such of the equipment as had been in use more than five years was 15 percent of cost. Another witness, who also made an appraisal of the equipment in representative stores, concluded that the fair market value of the equipment over five years old was 19.8 percent of cost.

PVA maintains that Kroger's evidence merely tended to show "salvage" or "distress" value of equipment discontinued from use, and was not competent evidence of fair cash value of equipment in use. PVA argues that a fair cash value of equipment in use in the operation of a going commercial enterprise is enhanced by an "in-use" or "unit" factor, and he says that the formula in question is designed to give recognition to that factor. He cites cases in which "unit" values were placed for tax purposes on an enterprise such as a railroad, a mine or a distillery. See Eminence Distillery Co. v. Henry County Board of Supervisors, 178 Ky. 811, 200 S.W. 347; Commonwealth v. Southern Railway Co.,

193 Ky. 474, 237 S.W. 11; and Carr's Fork Coal Co. v. Perry County Board of Supervisors, 263 Ky. 642, 93 S.W.2d 359. Without regard to other possible grounds of distinction (such as that the Southern Railway case involved a tax specifically levied on the *intangible* value of a going business), we note that in those cases the enterprise was *valued as a unit,* of which the various unvalued items of property were considered as contributing components. In the instant case the items of equipment were valued separately, and the formula undertook to assign an enhanced value to each item by reason of its being a part of an unvalued whole. We can understand how the value of a unit can be estimated without valuing each of its parts, but it is difficult for us to see how a part can be given a "unit" value without first determining the value of the unit.

Actually, we think the concepts of "in-use" value and "unit" value are being misused in the PVA's argument. It is true that in some cases courts have said that the fact that an item of equipment is *in use* as a component of a *unit* may make its value as a contributing component greater than its value considered in isolation as a separate item. But in those cases the application of this theory was to reach a value of the unit as a whole, not to reach a value for each separate item. PVA attempts to use the "in-use" concept as a basis for saying that so long as an item of equipment is in use it may be considered to have a higher market value than when its use is discontinued. Under that proposition, it really makes no difference whether or not the use of the item is as part of a unit.

The goal is an estimation of fair cash value. It is obvious that a going business unit normally will sell at a higher price than an idle conglomeration of equipment, because that makes it more attractive to the buyer who is buying a business. Thus the business may be considered as a unit to have a higher value than the sum of its parts valued separately. But it is by no

means as obvious that an individual item of equipment has a higher sale value simply because it is in use, as a part of a business unit or otherwise. The fact that it is in use does not make it any more valuable to the *buyer*. The only basis on which the fact of being in use could be considered as enhancing the sale value would be that since the continued use of the item gives it more value to the owner, the price he would ask for it would be higher, and in the barter between seller and buyer the buyer would be compelled to pay more.

■ We believe that the formula in question cannot be sustained on the "unit" theory because the formula is not designed to produce a unit value. On the other hand, we cannot say that the "in-use" theory is so illusory and unsound that the formula is made invalid by the fact that, as it relates to equipment over five years old, it invokes the "in-use" theory in assuming that the equipment retains at least 50 percent of its original value from the mere fact that the owner continues to use it in his business. We believe that the formula may be accepted as *prima facie* meeting the test of being fairly designed for the purpose of reaching, and reasonably tending to reach, an approximation of the fair voluntary sale price. See Fayette County Board of Supervisors v. O'Rear, Ky., 275 S.W.2d 577. However, the *strength* of its prima facie validity is another matter. Cf. Lee v. Tucker, Ky., 365 S.W.2d 849.

Kroger's evidence, particularly the evidence as to the prices brought by the equipment of an entire store at an auction sale, and the appraisals made by the two expert witnesses of the equipment in use in representative stores, was fairly indicative of actual sale value as distinguished from purely estimated sale value. In view of that evidence, we cannot say that the Board of Tax Appeals was *required* to accept the assessment based on the formula. Cf. Citizens Fidelity Bank & Trust Co. v. Reeves, Ky., 259 S.W.2d 432; Evans Oil & Gas Co. v. Draughn, Ky., 367 S.W.2d 453.

PVA having introduced no evidence, we think the Board of Tax Appeals was warranted in rejecting the formula-assessed value and in fixing the lower value based on Kroger's evidence.

■ Since the view we are taking disposes of PVA's appeal, it is not strictly required that we give consideration to Kroger's argument that the formula is discriminatory because it excludes motor vehicles, and permits them to be depreciated progressively even after five years of use. We have considered it, however, and our answer is that since there is such an extensive market for used vehicles as to furnish almost an exact value for them, there is no occasion to use a formula to determine their estimated value.

The judgment is affirmed.

All concur.